ABIJAH WESTON et al., Respondents, v. DANIEL G. BROWN et al., Appellants.

1. REMEDY — SCOPE OF ACTION FOR MONEY HAD AND RECEIVED. Whenever one person has in his possession money which he cannot conscientiously retain from another, the latter may recover it in an action for money had and received, subject to the restriction that the mode of trial and the relief which can be given in a legal action are adapted to the exigencies of the particular case, and that the transaction is capable of adjustment by that procedure, without prejudice to the interests of third persons.

2. RECOVERY OF PROCEEDS OF SALES OF PERSONAL PROPERTY. An agreement in writing, by which W. agreed to sell and ship lumber to B. at prices to be agreed upon, provided that lumber so shipped and delivered should be kept by B. until sold by him, and that, until sold, the lumber, and afterwards the proceeds of sales, should remain the property of W. until the lumber was fully paid for, the moneys received by B. for sales to be moneys had and received for W.; and it was declared to be the purpose of the agreement that B. should be in no manner restricted in making sales to *bona fide* purchasers of lumber so sold to him, but that ownership of the lumber and the proceeds should remain in W. until all indebtedness was canceled. Lumber shipped by W. to B. under the agreement was sold by the latter to purchasers in whom the title vested, and the proceeds were retained by B. *Held*, that W. was entitled to recover the proceeds of the lumber from B. in an action at law as for money had and received, and was not restricted to an action in equity for an accounting.

*Weston* v. *Brown*, 91 Hun, 639, affirmed.

(Argued January 26, 1899; decided February 28, 1899.)

APPEAL from a judgment and order of the late General Term of the Supreme Court in the second judicial department, entered December 4, 1895, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

This action was brought to recover upon promissory notes given to the plaintiffs by the defendants on account of lumber, and also to recover a balance alleged to be due upon the account for the lumber, for discounts paid upon the paper and for money paid for freights.

The facts, so far as material, are stated in the opinion.

*James M. Hunt* for appellants. The agreement under which, as the referee found, all the lumber in question was shipped, cannot be construed as a chattel mortgage, nor as a bill of sale. It merely created an agency to sell. (Benj. on Sales [6th ed.], 289; *Ballard* v. *Burgett,* 40 N. Y. 314; *Cole* v. *Mann,* 62 N. Y. 1; *Booher* v. *Stewart,* 75 Hun, 214; *Earle* v. *Robinson,* 91 Hun, 363.) The judgment in this action, based upon the report of the referee, is not *secundum allegata* and cannot stand. (*Kley* v. *Healy,* 149 N. Y. 346; *Reed* v. *McConnell,* 133 N. Y. 425; *Romeyn* v. *Sickles,* 108 N. Y. 650; *Day* v. *Town of New Lots,* 107 N. Y. 148; *Southwick* v. *F. Nat. Bank,* 84 N. Y. 420; Code Civ. Pro. § 1207; *Clapp* v. *McCabe,* 84 Hun, 379; *Hollister* v. *Englehart,* 11 Hun, 446.) The following statements contained in the referee's report, to wit: "The course of dealing between the defendants and the plaintiffs upon said export account was that of buyers and sellers and debtors and creditors respectively;" and "that such promissory notes were treated by plaintiffs and defendants as liabilities to be ultimately paid by defendants," are not supported by proof. (*Crosby* v. *D. & H. C. Co.,* 128 N. Y. 641.) The finding of the referee to the effect that the lumber stored and remaining unsold upon Hunter's Point yard at the time of the fire on May 6, 1891, was of the value of $33,511.07 and no more, is contrary to the evidence. (*Law* v. *Merrills,* 6 Wend. 277; *People* v. *Burton,* 77 Hun, 498.) The finding of the referee to the effect

46

that the lumber shipped on this export account was shipped
pursuant to the terms of the written agreement, and that
plaintiffs could not recover in this action for the lumber
which remained upon the yard and was burned up on May 6,
1891, is conclusive upon this appeal upon this point. (*Barn-
ard* v. *Gantz*, 140 N. Y. 249; *Blewitt* v. *Boorum*, 142 N. Y.
357; *Bridger* v. *Goldsmith*, 143 N. Y. 424.) The judgment
should be reversed for errors in the admission and exclusion
of evidence. (*Morris* v. *N. Y., O. & W. R. R. Co.*, 148 N.
Y. 88; *Hurlburt* v. *Hurlburt*, 128 N. Y. 420; *Marx* v. *M. R.
Co.*, 10 N. Y. Supp. 159; *People* v. *Buchanan*, 145 N. Y.
26.)

*Frederick P. Bellamy* for respondents. The judgment of
the court below was strictly "consistent with the complaint
and embraced within the issue," as required by the Code.
(Code Civ. Pro. §§ 1022, 1207.) The written agreement,
dated February 17, 1890, after the sales began, and signed in
May, 1890, was not inconsistent with the previously existing
agreement of January, 1890, under which the dealings began,
and was not intended to supersede it. Its obvious intent was,
while recognizing the transactions as present sales to appel-
lants, to allow respondents to retain the title as security
till payment to them. (*Wait* v. *Green*, 36 N. Y. 556;
*Molk* v. *H. N. Bank*, 22 Hun, 354.) The agreement dated
February 17, 1890, legally confirmed appellants' risk and
liability to respondents ˚as purchasers on delivery, although it
vested the title in respondents till payment of purchase price.
(*Comer* v. *Cunningham*, 77 N. Y. 391; *Brewer* v. *Ford*, 54
Hun, 116; 59 Hun, 17; 126 N. Y. 643; *N. C. R. Co.* v.
*Coleman*, 85 Hun, 125; *Wait* v. *Green*, 36 N. Y. 556; *Brom-
ley* v. *Taft*, 66 Miss. 48; *Taft* v. *Griffin*, 107 N. C. 47; *M.
S. Co.* v. *Emanuel*, 21 Abb. [N. C.] 185; *Boon* v. *Moss*, 70
N. Y. 473.) In view of the referee's decision limiting
respondents' recovery to that portion of the lumber bought
by appellants, which appellants resold before the fire, it is
impossible that appellants could have been injured by the

admission or exclusion of any evidence under appellants' exceptions here relied on, even if appellants' exceptions had been well taken. (*Matter of N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 342; *Cook* v. *N. Y. E. R. R.*, 144 N. Y. 115; *Matter of Bernsee*, 141 N. Y. 389; *Henricus* v. *Englert*, 137 N. Y. 488; *Kiersted* v. *O. & A. R. R. Co.*, 69 N. Y. 346; *Case* v. *P. B. Co.*, 134 N. Y. 78; *Thomas* v. *Scutt*, 127 N. Y. 134; *Hess* v. *Auken*, 65 N. Y. S. R. 119; *M. M. Co.* v. *Trowbridge*, 68 Hun, 28.) The judgment is overwhelmingly supported by the evidence on every point, and the appellate tribunal is never warranted in reversing a judgment merely because it might have arrived at a different conclusion on conflicting testimony. (*Aldridge* v. *Aldridge*, 120 N. Y. 617; *Baird* v. *Mayor, etc.*, 96 N. Y. 569.)

PARKER, Ch. J. The plaintiffs shipped to the defendants, at their request, lumber of the value of $185,392.57. Of this lumber $151,881.50 in value was sold by the defendants, who collected and retained the proceeds; this left on hand lumber of the value of $33,511.07, which the defendants insured for their own benefit. This lumber was burned while thus insured and in the defendants' possession, and the plaintiffs have not been permitted to recover anything on account of such lumber in this action; but the question whether the plaintiffs should have been allowed to recover for the lumber not being before us, it will not be considered.

The plaintiffs received from the defendants from time to time such sums of money that at the time of the direction of judgment by the report of the referee there was a balance due to the plaintiffs on account of the $151,881.50, of cash, which the defendants had received for lumber sold, $97,012.47, which, with interest at the date of the referee's report, amounted to $113,892.64. The facts thus stated were found by the referee and necessarily affirmed at the General Term, and as they have evidence in their support it is of no legal importance what the views of this court may be; but if it were of moment we should unhesitatingly agree that the evidence not

only justified, but required such findings. As there are no
exceptions taken to the rulings of the court in admitting or
rejecting evidence, which call for a reversal of the decision
below, it would seem as if there ought not to be any serious
difficulty in affirming a judgment that simply adjudges that
the defendants pay to the plaintiffs such a sum of money only
as they actually have in their pockets, every dollar of which
was received by them as the proceeds of lumber obtained from
the plaintiffs. But the appellants seem quite sure that the
plaintiffs have made a mistake in the selection of their remedy,
and they urge that the relations existing between the plaintiffs
and the defendants were such that the former should have pro-
ceeded on the equity side of the court in an action for an account-
ing, instead of the common-law side of the court for debt, and
such foundation as there is for this claim will later appear. It
seems that about the month of January, 1890, the plaintiffs,
who were partners under the firm name of A. Weston & Son,
and the defendants, who were partners under the firm name of
Brown & Company, orally entered into an arrangement for the
sale of lumber by the plaintiffs to the defendants to be shipped
from Tonawanda by the former to the latter at New York for
export account. Shortly thereafter shipments of lumber in
pursuance thereof were commenced by the plaintiffs, and the
defendants almost immediately began sending their notes to
the plaintiffs for discount, many of which were from time to
time renewed, and occasionally, when it seemed convenient to
do so, the defendants paid a note. It soon appeared that the
export account was to be a very large one, and a written
agreement bearing date of February 17th, 1890, was prepared
and some time in March was signed by the plaintiffs' firm, and
considerably later by the defendant Brown. The agreement
read as follows;

"This agreement, made this 17th day of February, 1890,
by and between A. Weston & Son, lumber dealers, of Tona-
wanda, N. Y., party of the first part, and Daniel G. Brown,
of Newburgh, Orange County, New York, of the second
part:

" Witnesseth : The said first party hereby agrees to sell and ship, at Tonawanda, to said second party, lumber of various kinds, at prices to be hereafter stated and agreed upon, from time to time, between the parties.　The lumber so shipped and delivered to said second party shall be kept by him at the lumber yard at Hunter's Point, Long Island, New York, until sold by said second party ; and all said lumber so shipped, and the proceeds of all sales thereof by said second party, shall be and remain the property of said first party until the said lumber so sold shall be fully paid for by said second party to said first party ; and all sums of money received by said second party, upon and for the sales of said lumber to him, shall be moneys had and received for said first party until a sufficient amount thereof shall have been paid to said first party by said second party to cancel the indebtedness arising upon the sale of the lumber so sold ; and all claims and demands arising upon the sale of such lumber by said second party shall also be and remain the property of said first party, under the conditions and terms of this agreement, until all of the indebtedness from said second party to said first party, upon account of the sales contemplated by and made under this agreement, shall be fully discharged.

" It is the purpose and intent of this agreement that said Daniel G. Brown shall in no manner be restricted in making sales of lumber, so sold to him, to *bona fide* purchasers, for a consideration arising solely upon the sale to them ; but that ownership of the lumber and its proceeds shall remain in the party of the first part until all the indebtedness for it is canceled.

" Witness the hands and seals of the parties, the day and year first above written.

　　　　　　　　" DANIEL G. BROWN,　[L. s.]
　　　　　　　　" A. WESTON & SON.　　[L. s.] "

Thereafter, the plaintiffs continued to ship lumber to the defendants at their request, the defendants sending notes for it from time to time, filling the export orders as opportunity

offered, and in all things conducting the business precisely as before this agreement was signed. But the appellants, invoking the rule that where there are inconsistent findings upon appeal an appellant is entitled to have considered as controlling the findings most favorable to him (*Schwinger* v. *Raymond*, 83 N. Y. 192) insist that the finding of the referee, which was in part to the effect that " the course of dealing between the defendants and plaintiffs upon said export account was that of buyers and sellers and debtors and creditors respectively," must be rejected because of another statement in the decision, viz., that the lumber was shipped by the plaintiffs to the defendants under the terms of the written agreement. Assuming, but not deciding, that the findings, instead of being in harmony with one another, are inconsistent, and that the appellants are in a position on this review to claim that this court cannot go outside of the agreement we have quoted to ascertain the legal relations that the parties bear towards one another as to the proceeds now in the defendants' possession, we still find no legal difficulty in the way of an affirmance of the judgment.

Our attention has been called to the cases of *Ballard* v. *Burgett* (40 N. Y. 314), *Austin* v. *Dye* (46 N. Y. 500), *Comer* v. *Cunningham* (77 N. Y. 391), and other cases in which have been considered the rights of *bona fide* purchasers who have bought personal property from a person whose possession of it has been acquired under an agreement that the title should remain in the vendor until the payment of the purchase price, but we shall not stop to consider them on this review ; for interesting as are the questions they present, they do not at all help us to understand this contract. So to that instrument we turn our attention, bearing in mind as we examine it that the defendants have had in their possession a sum of money that with interest is equal to the sum charged against them by this judgment, and that that money is the proceeds of lumber that once belonged to the plaintiffs and passed into the possession of the defendants under this agreement. Of this agreement, the appellants say, (1)

that the effect of the agreement was to make the defendants the agents of the plaintiffs, and as such they were bound to account in an action brought for that purpose ; (2) that by the agreement the title to the lumber sold never passed out of the Westons, and, therefore, they cannot maintain an action for goods sold and delivered.  The opening sentence of the agreement is that the party of the first part hereby agrees to sell and ship at Tonawanda ; then comes a provision that the lumber so shipped and delivered shall be kept by the party of the second part at Hunter's Point until sold, while the succeeding clause of the agreement, and a very reasonable one, indeed, in view of the fact that the plaintiffs were about to sell the defendants a very large amount of lumber, provides, in substance, that, until sold, the lumber, and afterwards the proceeds of sale, to be and remain the property of the party of the first part until the lumber shall be fully paid for.  Attention is also called to the latter part of the agreement, in which it is declared to be the purpose of the agreement that the defendants shall be in no manner restricted in making sales to *bona fide* purchasers of lumber sold to them, but that ownership of the lumber and the proceeds shall be in the party of the first part until all indebtedness is canceled.  There is nothing in this agreement which suggests that the scheme of the parties was to make the defendants the agents of the plaintiffs.  On the contrary, the sales were intended to be absolute and at a fixed price, the defendants to receive as much more than the purchase price as they could secure for the lumber, but whether they received more or less than they agreed to pay mattered not as between them and the plaintiffs, for the purchase price they were to pay.  The clause of the agreement providing that the lumber should remain the property of the plaintiffs was intended for their security, but was not to affect the right of the defendants to make a sale of the lumber and vest a good title in the purchaser ; the operation of the agreement in that case was to substitute the proceeds for the lumber. Now, in the course of time that has taken place, the lumber has been sold, the title thereto vested in the purchaser and the

proceeds of the lumber have come into the possession of these defendants. Turning to the agreement we find that the parties have by it fixed and determined the legal status of the parties to it as to these proceeds while in the hands of these defendants. One of its provisions reads: " And all sums of money received by said second party upon and for the sales of lumber to him shall be money had and received for said first party."

Now, the action for money had and received was always maintainable at common law. Indeed, it was the form of action by which the courts at common law originally compelled a party to pay over money to which another was equitably entitled. The scope of the remedy was gradually extended until it reached a state of development accurately described by Judge ANDREWS in *Roberts* v. *Ely* (113 N. Y. 128–131) as follows: " Whenever one person has in his possession money which he cannot conscientiously retain from another, the latter may recover it in this form of action, subject to the restriction that the mode of trial and the relief which can be given in a legal action are adapted to the exigencies of the particular case, and that the transaction is capable of adjustment by that procedure, without prejudice to the interests of third persons."

The relief demanded in the complaint and granted by the judgment was adapted to the exigencies of this particular case, and the stipulation of the parties, that the moneys should be regarded as moneys had and received for the plaintiffs by these defendants, necessarily pointed directly to an action of this character for their recovery.

The judgment should be affirmed, with costs.

. All concur.

Judgment and order affirmed.