(99 App. Div. 201)

## MERINO v. MUNOZ.

(Supreme Court, Appellate Division, First Department. December 9, 1904.)

1. DECEDENT'S ESTATE—CLAIM—INFORMALITY—WAIVER.

Where a claim was presented against a decedent's estate in the form of a letter, but the parties, in disregard of the informal presentation, adopted the letter as the basis of the issue, by consent referred the same, and litigated, without objection, every question on which it was based, the plaintiff became entitled to recover, if, on any theory presented by the evidence, he established a valid, legal demand against the estate.

2. SAME—MONEY HAD AND RECEIVED—APPLICATION OF EQUITABLE PRINCIPLES.

It is no objection to the maintenance of an action for money had and received against a decedent's estate that to some extent equitable principles are to be applied, such as impressing the money sought to be recovered with a trust in the hands of the holder, examining the accounts of the deceased showing a course of dealing between him and others in the transaction in question, or showing that false representations were made to plaintiffs to induce them to part with their money; it appearing that the rights of the parties to the action with respect to the money sought to be recovered are capable of adjustment without prejudice to the interest of others.

3. CONTRACT—MISAPPLICATION OF MONEY RECEIVED—EVIDENCE—SUFFICIENCY.

Plaintiff agreed to take a quarter interest in a mining claim with defendant's testator, with proportional share in the profits, and, on testator's representing that the total price was $300,000, sent him $75,000. In an action to recover the difference between the amount paid by plaintiff and one-fourth of the amount actually paid by testator, evidence examined, and *held* sufficient to show that certain amounts paid by plaintiff to testator formed a part of the $75,000 to be applied on the $300,000 purchase price, but were not so applied.

Patterson and O'Brien, JJ., dissenting.

Appeal from Judgment on Report of Referee.

Action by Pedro A. Merino, surviving partner of Pedro N. Merino & Sons, against Leontine C. Munoz, executrix of the estate of Jose M. Munoz. From a judgment for defendant, plaintiff appeals. Reversed.

See 38 N. Y. Supp. 678.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

James L. Bishop, for appellant.
Henry Major, for respondent.

HATCH, J. The claim against the estate was presented in the form of a letter. No attempt was made to comply with the provisions of the Code regulating such procedure. The parties, however, in disregard of the informal presentation, adopted the letter

as the basis of the issue, by consent referred the same, and have litigated, without objection, every question upon which it was based. The plaintiff, therefore, became entitled to recover, if, upon any theory presented by the evidence, he establishd a valid, legal demand against the estate of the testator. The letter, together with the proof, clearly identifies the character and amount of the claim and the transaction out of which it arose. This is sufficient if the evidence shows that the testator was indebted to the plaintiff. Titus v. Poole, 145 N. Y. 414, 40 N. E. 228.

Upon a former appeal (5 App. Div. 71, 38 N. Y. Supp. 678) this court held that the relation which existed between the plaintiff and defendant's testator in respect of the claim sought to be established was that of copartners in a particular venture; that the $300,000, which was represented by deceased as the purchase price of the mines under the original contract, was to be taken as the basis upon which the plaintiffs made their contribution of $75,000 for a one-fourth interest; that if in fact the purchase price was less than the sum of $300,000, to that extent defendant's testator held a proportionate part of the $75,000 as a trustee for the plaintiffs; that such sum so established, whatever it be, the plaintiffs were entitled to recover in this proceeding. The additional evidence presented upon the last trial strengthens the proof given upon the former trial, and sustains the conclusion which the court announced on the former appeal. The essential facts are stated in the opinion, and it is not necessary that we again restate them or the additional proof which has been offered, save so far as necessary to elucidate the conclusion at which we have arrived. The action is in every essential aspect one for money had and received, and it is no objection to its maintenance that to some extent equitable principles are to be applied, or that the money sought to be recovered is impressed with a trust in the hands of the holder. The rights of the parties herein with respect to the money sought to be recovered are capable of adjustment without prejudice to the interest of others, and jurisdiction is therefore vested in the common-law courts to determine the controversy. Roberts v. Ely, 113 N. Y. 128, 20 N. E. 606; Weston v. Brown, 158 N. Y. 360, 53 N. E. 36; Bank of Commerce v. Union Bank, 3 N. Y. 230.

It is no objection, therefore, to the plaintiff's claim, that in the establishment of it he has found it necessary to examine the accounts of defendant's testator, and also in showing a course of dealing between him and the vendors of the mines, both as to the particular transaction and others, and also in showing that false representations were made to induce the plaintiffs to embark in the venture. If from it all the plaintiffs succeed in establishing the fact that the purchase price paid in property and money for the mines was less than the sum which was represented to the plaintiffs as having been paid, they will have made out a cause of action, even though equitable rules are invoked in order to award a recovery. This being the status of the parties, their rights are to be determined based thereon. The letter which formed the basis of the proceeding made claim to the sum of $25,000, upon the

theory that the original purchase price was $300,000, and that subsequent to such purchase the vendors allowed a rebate of $100,000 to the plaintiffs upon the purchase price, and one-fourth of such sum the plaintiff claims belonged to him.   It was found by the referee, and is admitted by the appellant, that there was no evidence adduced showing that any such rebate was ever paid.  This, however, is not an essential feature to the plaintiff's right of recovery. The basis of such right, if it exist at all, rests in the fact that the deceased possessed himself of moneys, belonging to the plaintiff, to apply upon the purchase price of the mines, which in fact he never used, and such was the question litigated, without objection, upon this trial.   It is not of consequence, therefore, whether the deceased secured money as a rebate upon the purchase price after the agreement, or whether he received and retained moneys which he did not so apply.  The action or proceeding seeks to reach such money, and if, in fact, it remained in the hands of the deceased and was not so applied, the plaintiffs are entitled to a judgment for the amount, without regard to the specific claim which they made in their letter.  The learned referee did not rest his conclusion upon this fact alone, but found in express terms that the agreement of March 7, 1883, and its modification on March 28th, following, was fully performed by the deceased, and this necessarily involved the conclusion that the $300,000 was in fact paid in money or property, or both.  It is evident from a reading of the record that the conclusion thus reached by the referee had been made to rest in the main upon the testimony of Whiton, one of the vendors of the mines.  He testified in general terms that the purchase price of the original mines, mentioned in the contract, was $300,000, made up of $200,000 paid in cash and $100,000 paid in stock.  It is claimed by the appellant that the stock so paid was in fact worthless, but we are not able to see how this fact can affect the transaction. The representation was that stock was to be used in the transaction, and it was quite permissible, without being guilty of dereliction in any respect, to deal for the purchase of the mines upon the basis of $300,000 as the purchase price and payment be made in stock as the parties might agree.  So far, therefore, as the $100,000 of stock is concerned, it is undisputed that it was received as a part of the purchase price, at par, and such use of it is not to be attacked in this proceeding.  The inquiry becomes narrowed, therefore, to the cash payment of $200,000.  The referee has found this this sum was paid, and his finding is to be sustained, if it be fairly supported by the testimony.  Indeed, the plaintiff is bound to establish that such sum was not paid.  It is not pretended that $200,000 in cash was delivered in a single payment.  The sums which made it up were paid at various times and in varying amounts.  The appellant claims that a fair analysis of the testimony shows that three items at least, and he claims more, which went to make up this amount, are not supported by the testimony, but, on the contrary, that it is clearly established that such sums were not paid upon the purchase price of the mines, but upon other transactions having no relation thereto.  The first contract em-

braced the "Black Horse group" and the "Black Giant group" of mines, and no others, and it was for the purchase price of these mines that the plaintiffs contributed the $75,000 for a quarter interest. Under date of August 24, 1883, the deceased wrote the plaintiffs that he had purchased other interests held by Webb, Anderson & Whiton and Webb & Whiton, and invited them to join him in such venture, stating that the whole amount required would be about $3,000 or $4,000. On October 11, 1883, in another letter written by the deceased to the plaintiffs, he states that it had been agreed between them to take an interest in all new locations and purchases aside from the main purchase, although it does not appear when the plaintiffs accepted such proposition. It is made fairly to appear, however, that there were two contracts in this respect, each independent of the other, but nowhere is it suggested that any part of the $75,000 was to be applied upon any other contract than the original purchase of $300,000, nor is it established, so far as we are able to discover, that any part of it was authorized to be used by the plaintiffs in payment for any of the other new properties under the subsequent agreement. While Whiton testified in general terms that the $300,000 was in fact paid upon, the original contract, yet when he was cross-examined upon such subject his testimony is not only very much shaken, but, when taken in connection with the written declarations of the deceased, seems to be fairly overthrown as to a part of the cash payments. His testimony rested in the main upon the statement which he had caused to be made up under date of July 1, 1902, nearly 20 years after the original transaction. His memory respecting the actual transactions was quite faulty, and he relied in the main upon the written memorandum from which the statement was made and the statement itself. Therein appeared under date of November 3, 1882, three items, one a check of $5,000, draft $4,000, note $3,500, making in the aggregate $12,500. This sum, he testified, was paid upon the original purchase. The payment, as appears by the dates, was prior to the contract which the deceased made for the purchase of the mines, or its modification, and in avoidance of this difficulty he testified that, while it was made upon a deal independent of such contract, yet that he agreed, when the later contract was made, to apply thereon as a part of the purchase price this sum of $12,500. Under date of March 29, 1883, was an indorsement showing the purchase of certain mines for $12,500, and under this date there was a statement of settle-. ment in full for $7,500, due on that sale, paid by a note of the deceased, dated January 16, 1883, for $3,500, and a note of A. H. Smith & Co., dated March 16, 1883, for $4,000, and $5,000, as appears by the statement, had been theretofore paid in cash; but it nowhere appears in Whiton's testimony that this particular item of $12,500·was at any time applied on any transaction aside from that specified therein, save his oral declaration that he subsequently allowed it upon such purchase. The transaction itself was over four months prior to the date of the original contract for the $300,000 purchase, and it was consummated and settled in

writing after such contract was made. In the settlement thus made is no suggestion that it was applied upon the $300,000 purchase, and Whiton's final statement upon such subject was that the $300,000 "be paid to my satisfaction." His examination as to the application of the $12,500 item is very unsatisfactory, and does not at all comport with the written statements. It might, however, be supported and the conclusion of the referee upheld, were it not for the written declarations of the deceased himself relating to such subject. Under date of November 20, 1883, the deceased wrote Pedro A. Merino as follows:

"As regards the acquisition of the outside interests in other lodes apart from the interest already secured in the Black Horse and Black Giant groups and also containing an interest in other lodes both in the Needles and other districts, apart from the $300,000 which I agreed to pay in the original purchase: I have paid to Webb & Whiton a further sum of $12,500 as a sort of bonus in order to participate in the lodes secured and to be secured, both in the Needle Mountain region and in the Eureka Gulch region, and where the Ben Franklin is situated, agreeing besides to pay my proportion of the actual cash disbursements which the acquisition of those outside those might entail either for the purpose of purchasing the interests of others in the lode or in disbursements required by law in locating new lodes so as to secure patents. This $12,500 bonus I had already paid even before I had finally secured the option ¼ and ⅓ interest as appeared on copy of contract sent you. The bonus of $12,500 was entirely outside matter from the $300,000 contract, for at first, I did not see my way clear to make the large payments required by the latter contract, and I wish anyhow to have an acquisition if only in other subsequent acquisitions outside. Besides the $12,500 I have paid out some $3,000 or $4,000. My proportion of cash disbursements for the purchase of several interests in lodes at Eureka Gulch in Needle Mountain, and for erection of several lodes, town sites, wood sites, &c."

Under date of January 2, 1884, is a statement made by the deceased respecting payments which had been made upon "the purchase of rights, claims, payment of bonus, assessment work, dues," etc., paid to Webb & Whiton and Webb, Anderson & Whiton over and above the $300,000 for a one-third of their interest in the Black Giant group and a one-fourth interest in the Black Horse group, as set forth in the original contract of March, 1883. Then follows the item: "Paid in cash in May, 1883, $12,500." This memorandum was sent in a letter to Pedro A. Merino under date of January 9, 1884. Therein he states:

"Enclosed find a memorandum of outlay paid out by me over and above my original purchase of interest with Webb, Anderson & Whiton and Webb & Whiton in the Needles. Please let me know if you want to take the same ¼ interest in my interest that you have taken in the other properties of the Needles."

Prior to this the plaintiff had paid something over $69,000, and under date of May 2, 1884, the last draft was drawn by Munoz to make up the full amount of $75,000. In thus appears from the plaintiff's statements that the item of $12,500 was never used in any form as a part of the purchase price of the $300,000 purchase. On the contrary, the express declaration is that it was excluded therefrom, and, when this testimony is coupled with the written memorandum over Whiton's signature, it becomes fairly established that this item was not applied upon the original purchase.

If not applied, to that extent the $200,000 cash payment of the original purchase price is reduced, as there is no evidence in this record to show that such sum was ever paid in full, unless this item be included, and it affirmatively appears that it was received and not so used. As to the item of $2,121.52 paid, according to Whiton's statement, under date of June 15, 1883, Whiton in terms testifies that it "must have been paid on account of additional properties, his properties," and the same is true of the $700 item added for interest. The plaintiff's right to recover does not depend upon his ability to establish that the whole sum of $25,000 was retained by the deceased. Any part of such sum which was not applied upon the $300,000 purchase or required to be so applied under the contract, the plaintiff is entitled to recover in this proceeding. As to the items that we have specified, the proof is that they were not so applied. The finding that they were by the referee is therefore overthrown, as the evidence is direct and satisfactory that they were never paid upon the purchase price or required to be so paid. As to such items, if there be any defense, it rests in the right of the deceased to appropriate these sums for other purposes, and, if such be the fact, the defendant may show it and thereby defeat the plaintiff's claim. This question can be disposed of upon another trial.

We do not feel called upon, in making disposition of this appeal, to carefully analyze the testimony respecting the transaction between the parties involved in the notes which were given, and their renewals, in order to arrive at a conclusion as to whether any part of the $75,000 was diverted in those transactions, as the whole matter will be subject of examination upon another trial. We reach the conclusion, however, that, as to the items to which we have called attention, it is made to appear that they formed a part of the $75,000 payment, and were to be applied upon the $300,000 purchase. The evidence is satisfactory to show that they were not so applied, and, if used in any of the outside matters, it devolves upon the defendant to show right to use them for such purpose, and that is not made to appear in this record.

It follows that the judgment should be reversed, and a new trial ordered before another referee, with costs to the appellant to abide the event.

VAN BRUNT, P. J., and LAUGHLIN, J., concur. PATTERSON and O'BRIEN, JJ., dissent.