Martin Evans, J.
Plaintiff moves for an order striking the jury demand of thé defendant, Agnes B. Schmitt, on the ground that defendant, in this type of action, has no right to trial by jury.
The complaint in long form alleges that one of the plaintiffs, acting as agent for the other plaintiffs, gave $19,000 to a law firm to hold in escrow for certain purposes; that the money was deposited in a bank; that one Schmitt, a member of the firm, wrongfully withdrew $14,103.18 from the escrow fund and converted it to his own use; of this $14,103.18 wrongfully withdrawn, $5,764.64 was used by him for the payment of Federal and State income taxes which were the joint and several obligations of Schmitt and of the defendant Agnes B. Schmitt, his wife.
As a conclusion, the plaintiff alleges that by reason of the foregoing, the defendant, Agnes B. Schmitt, owes the plaintiffs $5,764.64, with interest from a specified date, for which plaintiffs seek judgment against this defendant.
Parenthetically, it appears that Schmitt died in February, 1969, his estate is insolvent, and there has been a partial settlement by plaintiff with the law firm, the action against it then being discontinued. At this juncture plaintiff looks solely to the widow of the wrongdoer. No claim is made that his acts were done with her knowledge or consent.
The defendant law firm, prior to the discontinuance, interposed a demand for trial by jury. It is clear that this jury demand inured to the benefit of all defendants and the discontinuance of the action against the defendant law firm did not have the result of a withdrawal of a right to a jury trial if such right existed in the remaining defendant.
Plaintiff bases his motion on the ground that the action is one in equity and n-o jury is allowed in an action of this nature. Defendant claims the action is simply for money had and received, as to which a jury is allowed.
That plaintiff states a cause of action is clear; less clear is the particular compartment into which the court is required to place it for the purpose of determining whether defendant is entitled to a jury trial of the issues.
For proper analysis the problem should be viewed from both historical and the eclectic or utilitarian points of view.
*586 The scope of the action of money had and received has gradually been expanded to embrace many cases formerly cognizable in courts of equity. It is described in Roberts v. Ely (113 N. Y. 128, 131) in the following words: “ Whenever one person has in his possession money which he cannot conscientiously retain from another, the latter may recover it in this form of action, subject to the restriction that the mode of trial and the relief which can be given in a legal action are adapted to the exigencies of the particular pase, and that the transaction is capable of adjustment by that procedure, without prejudice to the interests of third persons.” However, this form of action is limited to instances where money, or its equivalent has been received (Clearview Gardens First Corp. v. Weisman, 206 Misc. 526) and it will lie against any person who participates in the tort and accepts its fruits but not if neither money nor its equivalent has been received (Gottfried v. Gottfried, 269 App. Div. 413), and an action for moneys had and received does not lie for moneys paid to the use of defendant. (27 Cyclopedia of Law and Procedure (1907) 865; Claycomb v. McCoy, 48 Ill. 110; Ford v. Keith, 1 Mass. 139.)
Neither can this action be considered as an action for moneys paid to the use of defendant, a form of the early common-law actions of assumpsit, since no request for such payment by the defendant has been alleged (Chitty, Pleadings [1837] 112; Chase’s Blackstone [1877] p. 712); nor can such a request be implied in this case.
Plaintiff’s theory on this motion, although not expressed beyond the claim that an action based on unjust enrichment is an equitable action as to which a jury is not permitted, seems to be based on the claim that subrogation of the plaintiff to the position of defendant’s paid creditor should be permitted.
A court of equity had power to “ prevent the unjust enrichment of a defendant not only by enforcing a constructive trust or imposing an equitable lien, but also, where the plaintiff’s property has been used by him or by another in discharging an obligation, by permitting the plaintiff to be subrogated to the position of the obligee. * * * Where the plaintiff’s money is used in discharging a debt of the defendant under such circumstances that the plaintiff is entitled to subrogation, he can enforce such rights as the creditor had prior to payment of the debt.” (4 Scott, Trusts [2d ed.], § 464, p. 3115).
“ Where the wrongdoer uses the claimant’s money in paying the debt of a third person, the claimant is entitled to be subrogated to the rights of the creditor, unless the third person is *587 in the position of a bona fide purchaser. * * * Accordingly, he can maintain a quasi-contractual action at law against the third person for money paid to his use, or by a proceeding in equity he is entitled to be subrogated to the rights of the creditor.” (4 Scott, Trusts [2d ed.], § 514.3, p. 3284).
Subrogation, a doctrine of Eoman or Civil Law which was adopted by courts of equity, is founded on principles of justice and equity. It “is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. It is an appropriate means of preventing unjust enrichment.” (83 C. J. S., Subrogation, pp. 582-583).
‘ ‘ Where one person discharges an obligation owed by another to a third person under such circumstances that he is entitled to subrogation, and the third person had a claim entitling him to preference over the claims of other creditors, he is entitled to a similar preference, except where the right of the creditor to priority was merely personal to him. Thus if by statute a tax imposes a personal liability upon the taxpayer and the taxing authority is entitled to a preference over other creditors of the taxpayer, a person who by mistake pays the tax is entitled to be subrogated to the position to the taxing authority and thereby to obtain priority over other creditors of the taxpayer. The other creditors have no ground of objection since they are thereby placed in no worse position than that which they would have occupied if the claim had not been paid.” (Eestatement, Eestitution, § 162).
“ The scope of the right of subrogation consists in the immediate transfer, by operation of law, to the promisor in surety-ship of all the fights of the creditor against the principal whenever the promisor pays the debt or satisfies the obligation. This right of subrogation is independent of any agreement between the parties and rests upon principles of natural justice and equity.
‘ ‘ Subrogation is not limited in its application to transactions in suretyship. Whenever one pays a debt of another, although not obligated to do so, if the payment was necessary for the protection of his own interests, the equity of subrogation arises.” (Stearns, Law of Suretyship [5 ed.], pp. 439-440).
If the full tax debt has been paid, in part with moneys of others, plaintiff’s right to be subrogated may be limited, pro rata. And if it appears at trial that the tax debt has not been paid in full, plaintiff may not be entitled to any subrogation. (4 Scott, Trusts [2d ed.], § 513.2.)
*588 "Whether plaintiff is entitled to subrogation to the rights of the decedent against the defendant for contribution of her share of the taxes (see Matter of McClure v. United States, 288 F. 2d 190; Phillips-Jones Corp. v. Parmley, 302 U. S. 232) or subrogation to the right of the Federal and State Governments against the defendant (see Foulke v. Pardee Works, 35 F. Supp. 734; Buhl v. Kavanagh, 118 F. 2d 315) as on a joint and several tax liability, will undoubtedly have to await the proof at trial.
Subrogation, originally of an equitable nature and cognizable only in courts of equity, is in modern times an example of an equitable doctrine working its way into courts of law. (See James, Eight to a Jury Trial in Civil Actions, 72 Yale L. J. 655, 657-663; Keener, Quasi-Contracts, ch. I.; People ex rel. Dusenbury v. Speir, 77 N. Y. 144.) Although many other States still require the action to be maintained as a bill in equity, this is not the law in New York. The Court of Appeals in Dunlop v. James (174 N. Y. 411, 415) said: “ It may readily be conceded that formerly subrogation was considered as purely an equitable remedy, and that it was so held as late as the case of Ontario Bank v. Walker (1 Hill 652). But long previous to this courts of law had begun to sustain actions founded on equitable assignments of claims which were cognizable at law, both in England and in this country. In the case of Sarah J. Weed (2 Low. 555-562) subrogation is defined as * an equitable assignment, operated by the law itself, when justice requires it; as, for instance, when a surety pays the debt of his principal; * * * or when one having an interest in the property or res, or honestly believing himself to have an interest, pays an earlier encumbrance.’ In modern times courts of law have dealt with subrogation as they would with assignments, and when the right of action to which plaintiff asks to be subrogated is a legal right of action, a court of law may treat a plaintiff who is entitled in equity to subrogation as an assignee, and allow him to maintain an action of a legal nature upon the right to which he claims to be subrogated.” (See, also, Boyd v. Finnegan, 3 Daly 222.)
In Simpson, Suretyship (1950 ed.) at page 208, it is stated, “ In modern times courts of law have dealt with subrogation as they would with assignments, and when the right of action to which plaintiff asks to be subrogated is a legal right of action, a court of law may treat a plaintiff who is entitled in equity to subrogation as an assignee, and allow him to maintain an action of a legal nature upon the right to which he claims to be subrogated.”
*589 In Fidelity & Cas. Co. of N. Y. v. Finch (3 A D 2d 141) the plaintiff, surety on a bond on which defendant was a principal, made payment and sued to recover the amount paid. Plaintiff’s motion for summary judgment was opposed on the ground that rule 113 of the Rules of Civil Practice did not permit such a motion in an equitable action. The court said (p. 143): “ Appellant argues that in any event the action is one based on subrogation, and as such is an action in equity and not a case in which summary judgment may be granted under rule 113 of the Rules of Civil Practice. It may be true that the doctrine of subrogation is of equitable origin but for all practical purposes it is also recognized as a legal doctrine. For many years both in this country and in England the courts have dealt with subrogation as they do with assignments. When the right of action to which plaintiff claims to be subrogated is a legal one the cause in subrogation may be treated as an action at law (Dunlop v. James, 174 N. Y. 411). That is precisely the situation here. Respondent claims subrogation to the right of the State to maintain an action against the defendant for a violation of a statutory duty to account for moneys. The subrogation action may therefore be considered as one at law, and embraced within subdivision 3 of rule 113.”
If the Government itself brought an action against the defendant for the recovery of income taxes, the defendant would be entitled to trial by jury. (Damsky v. Zavatt, 289 F. 2d 46.) Therefore, if plaintiffs establish that they are subrogated to the rights of the Government in this action, which is in effect to recover the debt of income taxes, defendant will be entitled to a jury trial.
Therefore, to the extent that the determination whether defendant is entitled to a jury trial is dependent upon the historic distinctions between law and equity, this analysis indicates that the jury demand may stand.
From the eclectic or utilitarian point of view, which refers to the mode of trial and the type of relief which is best suited to justice between the parties to this lawsuit, the result is the same.
For more than a century, commencing with the Field Code in 1848, the Legislature has attempted to abolish the distinction between law and equity; the most recent statutory directive appears in the CPLR 103 (subd. [a]) which in short form states that, “ There is only one form of civil action. The distinction between actions at law and suits in equity, and the forms of those actions and suits, have been abolished.”
*590 In a different but persuasive forum, a similar phrasing was before the court in a stockholders’ derivative suit. The court in Ross v. Bernhard (396 U. S. 531, 539-540) said, “ If, before 1938, the law had borrowed from equity, as it borrowed other things, the idea that stockholders could litigate for their recalcitrant corporation, the corporate claim, if legal, would undoubtedly have been tried to a jury. Of course, this did not occur, but the Federal Eules had a similar impact. Actions are no longer brought as actions at law or suits in equity. Under the Eules there is only one action — a ‘ civil action ’ — in which all claims may be joined and all remedies are available. Purely procedural impediments to the presentation of any issue by any party, based on the difference between law and equity, were destroyed.”
In making a utilitarian analysis, the basic tests for this have been stated in Roberts v. Ely (113 N. Y. 128). Confirming the extension of equitable principles to actions of law, the court said (p. 131) this extension was “ subject to the restriction that the mode of trial and the relief which can be given in a legal action are adapted to the exigencies of the particular case, and that the transaction is capable of adjustment by that procedure, without prejudice to the interests of third persons. ’ ’ The court repeated this phrasing of the test in Weston v. Brown (158 N. Y. 360) and it has become the settled law of this State. (See Merino v. Munoz, 99 App. Div. 201.) That plaintiffs might have sought and obtained equitable relief on the same facts by way of a declaration of rights (Clark v. Mosher, 107 N. Y. 118; cf. Simler v. Conner, 372 U. S. 221), by way of requiring the assignment of documents (Mahnk v. Blanchard, 233 App. Div. 555) and foreclosure of liens (Pease v. Egan, 131 N. Y. 262), or other in personam relief, does not destroy its right to seek for and recover a money judgment which is a traditional common-law remedy. ‘ ‘ "Where relief can be as completely had either in law or equity, an action at law is maintainable * * * the most obvious distinction between actions at law and actions in equity consists in different modes of relief.” (Troster v. Dann, 83 Misc. 399, 401-402).
The relief demanded here is a money judgment. No interim direction for an accounting or other in personam decree appears to be necessary. (Cf. Clearview Gardens First Corp. v. Weisman, 206 Misc. 526.) The mode of trial and the relief requested by the plaintiffs are suited to trial by jury. Constitutional provisions of jury trial create a guarantee of such mode of trial in at least certain cases; they do not prevent an extension to *591 new or different causes of action as to which this is an appropriate method.
To summarize, although the action is based on equitable principles, the relief requested here, and proper under the circumstances, does not call for a judgment granting equitable relief, and a jury trial is appropriate.
It has been suggested in the papers and briefs before the court that the defendant has available defenses which call for the application of equitable principles. (4 Scott, Trusts [2d ed.], § 514.) To the extent proper, which may only be determined upon the trial, these should be determined by the court. The prior rule requiring equitable defenses to be determined by a jury, instanced in Susquehanna S. S. Co. v. Anderson & Co. (239 N. Y. 285) has been changed, to the extent constitutionally permitted by CPLR 4101.
The motion is accordingly denied.