OPINION OF THE COURT
Charles H. Cohen, J.
Who is entitled to an escrow balance held by a mortgagee for the payment of real estate taxes, water and sewer rent charges when the real property involved is sold and no mention is made of the disposition of that escrow balance? The plaintiff seller is seeking to recover the amount of the escrow balance and is suing both the mortgagee (the bank) and the buyer. Plaintiff alleges "unjust enrichment” and "monies had and received” with respect to both defendants and also alleges "breach of written agreement” with respect to the bank.
On June, 5, 1968, certain mortgages were consolidated and *276 the bank was given a mortgage in the amount of $165,000 on the property by the then owner, Shelbourne, at which time Shelbourne conveyed the property to plaintiff. Paragraph 23 of this mortgage stated: "In addition to the regular monthly payments on account of principal and interest on this mortgage, the mortgagor convenants to pay to the mortgagee on each installment date an amount equal to Vi 2th of the annual charges for real estate taxes, water and sewer rent charges, in trust, the mortgagee to apply the same as received in satisfaction of the aforesaid obligations when due. The mortgagor agrees to deposit with the mortgagee any amount or additional amounts as may be required by the mortgagee in its estimation to meet said obligations when they become due.”
Subordinate to the bank mortgage was a purchase money mortgage on the property given by Shelbourne to Herman Lewis and Hattie F. Lewis dated February 1, 1968, in the amount of $200,751.87. By assignment dated November 13, 1974, this subordinate mortgage was assigned by Herman Lewis and Hattie F. Lewis to the buyer. By bargain and sale deed dated December 10, 1974, plaintiff conveyed the property to the buyer for $2,000 after a foreclosure action had been brought to foreclose the subordinate mortgage. Upon this conveyance being made, the buyer gave a general release to plaintiff, Shelbourne, and two individuals who were officers of, or associated with, plaintiff. This release contained the following statement: "In addition to this General Release, the foreclosure action now pending against Shelbourne Continental Corp. and Eighthway Corp. will be discontinued as soon as possible, and an order made discharging the lis pendens as well as the receiver. Copies of such order and cancellation of lis pendens will be furnished to you and stipulation of discontinuance will be executed and furnished by Plaintiff’s Attorney in favor of Shelbourne Continental Corp. and Eighthway Corp., and will be delivered to Shelborne Continental Corp. and Eighthway Corp.”
A real property transfer tax return, reciting plaintiff as the grantor and the buyer as the grantee, made with respect to a deed to the property delivered to the grantee on December 10, 1974, declared that the "Consideration paid or required to be paid without deductions” was $354,100. It further declared that "Mortgages * * * on the property before delivery of the deed which remained thereon after delivery” was $352,100. Schedule A of this return made reference to the bank mort *277 gage in the unpaid amount of $165,000 and to the subordinate mortgage in the unpaid amount of $187,000 for a total of "$352,100.”
Nothing was said or written concerning the escrow balance at or prior to the closing between plaintiff and the buyer. The matter of the escrow balance was not raised until February, 1975, when plaintiff apparently received its annual mortgage statement from the bank, and then, for the first time, notified the latter of the conveyance to the buyer and made demand for the escrow balance in the claimed amount of $6,120.76. (Plaintiff now recognizes that the escrow balance on December 10, 1974 amounted to $2,791.74 and has, accordingly, reduced its claim to that amount.)
In January, 1975, the bank used the escrow balance to pay the third quarter 1974-1975 real estate taxes on the property which taxes had become due on January 1, 1975.
The bank takes the position that it applied the escrow balance in accordance with paragraph 23 of its mortgage. The buyer takes the position that it received a deed in lieu of foreclosure and its total liability to plaintiff was the sum of $2,000 which it paid, and, further, bearing in mind that it was owed $187,000 with respect to the subordinate mortgage, it hardly should be required to pay plaintiff $2,791.74. Plaintiff contends that the buyer, as part of the arrangement made on December 10, 1974, released it from any liability and that its money was improperly used to pay taxes owed by the buyer.
ACTION AGAINST THE BANK FOR BREACH OF AGREEMENT
In this cause of action against the bank, plaintiff alleges that the latter breached the mortgage of June 5, 1968 made with plaintiff’s predecessor. Plaintiff claims that this breach occurred by reason of the bank having used plaintiff’s funds to pay taxes of a subsequent owner of the property. However, paragraph 23 of that mortgage does not support that claim at all. It provides that the "mortgagor” — which, at the time of the execution of the mortgage, was Shelbourne and not plaintiff — shall make the payments to the mortgagee "in trust” with the mortgagee (the bank) being required "to apply the same as received in satisfaction of the aforesaid obligations when due.” Indeed, upon making these payments to the bank, plaintiff gave up control of the payments made. (Matter of Valerio v College Point Sav. Bank, 48 Misc 2d 91, 92; Central Suffolk Hosp. Assn. v Downs, 213 NYS2d 192.) The bank *278 applied these payments to pay taxes on the property in accordance with the mortgage. There is nothing in this mortgage which restricts the use of the escrow balance upon the property being conveyed by one owner to another. The purpose of this provision was to guarantee the existence of a fund from which taxes, water and sewer charges could be paid when they became due. (Boyce v National Commercial Bank & Trust Co. of Albany, 41 Misc 2d 1071, 1072.) It was to protect the lien of the bank’s mortgage against the lien of any such taxes or charges regardless of who the owner might be. The rights of the bank could not be diminished by the conveyance to the buyer. (Howard v Bellinger, 200 Misc 1082, 1085.) Of course, in this case, the absence of liability on the part of the bank is particularly clear since the latter did not even know that plaintiff had conveyed the property until after it had applied the payments in accordance with this provision of the mortgage.
ACTION AGAINST BOTH DEFENDANTS
Plaintiff alleges causes of action against both defendants for "unjust enrichment” and "monies had and received by the defendants which monies belong to the plaintiff.” In order to determine if there is a liability on the part of a defendant under these causes of action, it is well to ascertain just what plaintiff wants. While plaintiff apparently sues for money had and received as a consequence of a claim of unjust enrichment (see Nacional Financiera, S. A. v Banco De Ponce, 120 NYS2d 373, 414, 415, affd 283 App Div 939), what plaintiff wants is restitution of the escrow balance. The name given by plaintiff to a cause of action is not particularly important. (Diemer v Diemer, 8 NY2d 206, 212.) It is clear to all the parties that plaintiff wants to recover the amount of this escrow balance as it existed on December 10, 1974. Accordingly, whether the claim is couched in terms of money had and received, unjust enrichment, restitution, quasi contract, subrogation or indemnify (see 50 NY Jur, Restitution and Implied Contracts, §§ 1, 2, 3; see, also, Tishman Realty & Constr. Co. v Schmitt, 69 Misc 2d 584), the question is whether, under the facts of this case, plaintiff is entitled to recover that amount against each defendant.
The broad principle upon which the determination of this case rests has been set forth by the Court of Appeals in Paramount Film Distr. Corp. v State of New York (30 NY2d *279 415, 421) as follows: "The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered (Grombach Prods, v. Waring, 293 N. Y. 609, 615; American Sur. Co. v. Conner, 251 N. Y., 1, 8-11; Miller v. Schloss, 218 N. Y. 400, 407; Schank v. Schuchman, 212 N. Y. 352; Restatement, Restitution, § 1; 50 N. Y. Jur., Restitution, §§ 1, 3). Such a claim is undoubtedly equitable and depends upon broad considerations of equity and justice (500 N. Y. Jur., Restitution, § 7). Generally, courts will look to see if a benefit has been conferred on the defendant under mistake of fact or law, if the benefit still remains with the defendant, if there has been otherwise a change of position by the defendant, and whether the defendant’s conduct was tortious or fraudulent (Restatement, Restitution, §§ 1, 142, esp. Comment b; id., § 155, including Comment b). ”
AS TO THE BANK
It is clear that there can be no recovery against the bank. While the bank received a benefit by virtue of money paid into the escrow account, this benefit did not arise as a consequence of any mistake. As already noted, payments made to the bank were made in accordance with the specific requirements of the bank’s mortgage, and the bank paid out of the money it received in accordance with that mortgage. Any benefit it received by virtue of taxes on the property being paid, was a benefit it was entitled to receive under the terms of the mortgage. There was simply no unjust enrichment on the part of bank and these causes of action against it must fail.
AS TO THE BUYER
The position of the buyer, however, is quite different from that of the bank. While the court is cognizant of the fact that prior to the transaction of December 10, 1974, the buyer did have a mortgage lien on plaintiff’s property in the amount of $187,000 which was apparently wiped out — although it does not appear that plaintiff had assumed any liability to the buyer on the underlying indebtedness — the buyer did on that day choose to purchse the property from plaintiff for $2,000. While the buyer contends that by virtue of its purchase of the property under these circumstances, all claims which plaintiff may have had against the buyer were eliminated, this is not *280 so. These parties did not release all claims against one another. Indeed, while the buyer gave plaintiff (and others) a general release, plaintiff did not give any release at all to the buyer. No adjustments were made at the time of the conveyance. The escrow balance was completely overlooked and the rights of the parties with respect to the escrow balance were simply not considered.
Under the principle of Paramount Film Distr. Corp. v State of New York (30 NY2d 415, 421, supra), quoted above, it is clear that when the bank in January, 1975 used the escrow balance to pay taxes on the property which had then become due, the buyer, which then owned the property, received a benefit. This was not a mere indirect or collateral benefit. It was a direct benefit of $2,791.74 which the buyer would otherwise have had to pay. Indeed, it was a windfall. It is not necessary in order for plaintiff to prevail, to show that it paid the money, which it seeks to recover, directly to the buyer. It is sufficient if another party, in this case the bank, took certain action — the payment of taxes — which gave the buyer this direct benefit. In 3105 Grand Corp. v City of New York (288 NY 178) the court found that plaintiffs were entitled to recover money stolen from them and used to pay taxes which were superior liens against property on which defendant was foreclosing a mortgage. It appeared that a receiver in a foreclosure proceeding brought by plaintiff took plaintiff’s money from his receivership account and gave it to another receiver of other property on which defendant was bringing a foreclosure proceeding. The other receiver used this money to pay taxes on the other property which defendant subsequently bought on the foreclosure sale. The court, on grounds of unjust enrichment and subrogation, found that plaintiff was entitled to recover from defendant the amount of money stolen and used to pay taxes on defendant’s property even though plaintiff had had no dealings with defendants. It declared (p 181): "Appellant has been unjustly enriched at the expense of plaintiffs to the extent that the taxes paid on the property of appellant were paid out of funds belonging to plaintiffs. (Restatement of the Law of Restitution, p. 12.) The claim of the city for these taxes constituted a lien superior to the lien of the mortgage of appellant. Under such circumstances a benefit resulting in unjust enrichment arises, not only where the moneys of an outside third party add to the property of another, but also where the payment saves the other from expense or loss.”
*281 In Brown v Rosenbaum (262 App Div 136, affd 287 NY 510, cert den 316 US 689) plaintiffs assignor who had sold national bank stock to defendant and had paid an assessment under a statute imposing a liability on national bank stockholders, which liability was primarily that of defendant, was permitted to recover the amount of the assessment paid. The court stated (p 141): "Liability here is predicated upon the broad equitable principle that a person who has discharged a debt which as between himself and another should have been discharged by the other is entitled to indemnity.” The court relied, among other authorities, upon Commercial Nat. Bank of Chicago v Sloman (121 App Div 874, 877), declaring "An action for money had and received, or paid out for the benefit of another, is founded upon equitable principles. No privity of contract between the parties is required except that which results from circumstances showing an equitable obligation” and Broderick v Aaron (264 NY 368, 375), declaring "upon equitable principles the law will imply from acceptance of benefits a quasi contractual obligation to indemnify against burdens, even though actual intention to give such indemnity is absent.”
Similarly, in the instant case, although there was no actual intention evinced by the parties that the buyer should indemnify plaintiff upon receiving the benefit of the escrow balance, the law will imply such an obligation upon the buyer’s receiving the benefit of the escrow balance when that balance was used to pay taxes on his property. This is so, even though the escrow balance was no longer within plaintiffs control (Central Suffolk Hosp. Assn. v Downs, 213 NYS2d 192, supra; Matter of Valerio v College Point Sav. Bank, 48 Misc 2d 91, 92, supra) since the significant fact is that the buyer received a direct benefit when taxes owing on its property were paid by funds supplied by plaintiff. See, also, Tishman Realty & Constr. Co. v Schmitt (69 Misc 2d 584, 585, supra) which found a complaint, alleging that one Schmitt had misappropriated plaintiffs funds and used part of such funds to pay joint and several tax obligations of Schmitt and his wife, to state a cause of action against the wife even though the wrongful acts were done without her knowledge or consent.
The buyer is liable to plaintiff despite the fact that it did nothing unlawful or wrongful. The principle of unjust enrichment and restitution involves the creation of an obligation by law when one party receives a direct benefit "under such *282 circumstances that in equity and good conscience he ought not to retain it”. (Miller v Schloss, 218 NY 400, 407; see, also, Roberts v Ely, 113 NY 128, 131.) Simply stated, "unjust” enrichment is not necessarily "unlawful” or "wrongful” enrichment. (Berri v City of New York, 16 NYS2d 86, 89, affd 16 NYS2d 1015, affd 259 App Div 453; Lengel v Lengel, 86 Misc 2d 460, 465; Tishman Realty & Constr. Co. v Schmitt, supra; Maisel v Schwartzbaum, 30 Misc 2d 880, 882; Lunt v Gennesee Val. Trust Co., 162 Misc 859.) Plaintiff’s forgetfulness in overlooking the escrow balance when it conveyed the property to the buyer does not bar its recovery where nothing giving rise to an estoppel has taken place. (White v Continental Nat. Bank, 64 NY 316; cf. Smith & McCrorken v Chatham Phenix Nat. Bank, 239 App Div 318, app dsmd 247 NY 541.)
The buyer raises the question as to whether or not the money in the escrow balance was that of plaintiff since it appears that at least some of the money paid into this escrow balance was not paid by plaintiff but by Herman Lewis (who, with Hattie F. Lewis, had been a second mortgagee). However, Lewis was acting as plaintiff’s agent in making these payments, the source of which was rent collected by Lewis from plaintiff’s tenants. There is nothing to show that Lewis or these tenants have any clam to the money in the escrow balance. Even if there were a dispute between Lewis and plaintiff concerning an account between them, this would not concern the buyer.
INTEREST
With respect to the problem of interest on plaintiff’s judgment against the buyer, the court notes CPLR 5001 (subd [a]) in which it is stated "that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court’s discretion.” While this action is one at law seeking the recovery of a money judgment, it is an action of an equitable nature. (Weston v Brown, 158 NY 360, 368; Roberts v Ely, 113 NY 128, 131, supra; Merino v Munoz, 99 App Div 201, 203; Tishman Realty & Constr. Co. v Schmitt, 69 Misc 2d 584, 590, supra.)
While interest might, perhaps, be imposed, from the date in January, 1975, when the bank used the balance to pay the taxes owed by the buyer on the property it then owned, it seems fairer, considering the fact that plaintiff had completely forgotten about the escrow balance, to impose interest from *283 the time the buyer knew that plaintiff asserted a claim against the buyer for the escrow balance. There is some question concerning the making of a formal demand by plaintiff upon the buyer for the payment of the escrow balance (although the institution of this action may be regarded as a demand for the payment of the escrow fund). (Locklin v Moore, 57 NY 360; Lion Brewery of N. Y. City v Loughran, 223 App Div 623; see, also, Dunning v Dunning, 300 NY 341.) However, it is clear that the buyer knew of plaintiffs claim to the escrow balance by or about February 21, 1975, and that the buyer knew that plaintiff was making this claim against the buyer as well as the bank by March 28, 1975, when the attorney who had represented the buyer at the closing of title (cf. Farr v Newman, 14 NY2d 183) wrote plaintiff a letter in which he indicated that he had consulted with his client and that they denied liability. (See Howard v France, 43 NY 593.) Under the circumstances, the court finds it equitable that interest run from March 28, 1975, and at a rate of 6% per annum (CPLR 5004).
CONCLUSION
Accordingly, the court directs judgment in favor of defendant, The Dime Savings Bank of Williamsburgh, against the plaintiff and in favor of plaintiff against defendant V. Ponte & Sons., Inc., in the amount of $2,791.74 with interest from March 25, 1975.
Since no evidence was introduced in support of counterclaim of V. Ponte & Sons, Inc., this counterclaim is dismissed and judgment shall be entered in favor of the plaintiff against this defendant on the counterclaim.