(17 App. Div. 340.)

In re MAJORITY OF DIRECTORS OF JAMES CHAMBERS, Limited.

(Supreme Court, Appellate Division, First Department. May 7, 1897.)

PRINCIPAL AND AGENT—WHEN RELATION EXISTS.

The relation of principal and agent is created by an agreement by a manufacturer to ship goods to be sold by the consignee as factor or agent for the manufacturer, and to pay each month an amount equal to the selling price, less' a commission,—the goods to remain the absolute property of the manufacturer until sold,—and therefore the manufacturer is entitled to notes taken by the agent for the price of the goods.

Ingraham, J., dissenting.

Appeal from special term, New York county.

Application by a majority of the directors of James Chambers, Limited, a corporation, for a final order of dissolution. From an order granting the petition of the Commonwealth Shoe & Leather Company to direct the receiver to pay to it the proceeds of the sale of certain goods, the receiver appeals. Affirmed.

Argued before WILLIAMS, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.

George S. Hastings, for appellant.
Charles E. Hughes, for respondent.

WILLIAMS, J. The proceeding for dissolution was commenced October 25, 1895. The appellant was then appointed temporary receiver, and acted as such until he was appointed permanent receiver, July 2, 1896. An agreement was made between the petitioner and the corporation, June 1, 1894, whereby, among other things, the petitioner agreed to manufacture and ship to the corporation, for sale on commission, boots and shoes; to invoice the goods at the petitioner's regular jobbing prices for stock goods,—the corporation not to sell' below the invoice prices; and to account for the goods at the selling prices, less the commission. And the corporation agreed to receive, hold, and sell the goods as factor or agent for petitioner; to render petitioner, on or before the 15th of each month, an account of the goods sold during the preceding month; and to pay to petitioner on or before the last day of each month an amount equal to the selling price, less a commission of 12½ per cent. And it was further agreed that the goods remaining on hand, and unsold by the corporation, 11 months after the date of their shipment, might, at the option of the

petitioner, be charged to the corporation at the invoice prices, less 12½ per cent., and a further discount of 10 per cent. of the net amount after deducting commission, and such charges to be paid the last day of the month following such charge; that the petitioner should at all reasonable times, during business hours, have access to the goods in the hands of the corporation; that all the goods should remain the absolute property of the petitioner until sold and delivered by the corporation to customers, or charged under the 11-months provision; that all goods, as soon as shipped by the petitioner, should be deemed in the custody of the corporation, which should thereafter bear any loss resulting from the destruction of or injury to such goods, from whatever cause, and in case of such destruction or damage the goods should be paid for as if they had been sold by the corporation at invoice prices at the time of such destruction or damage.    The agreement was to commence June 1, 1894, and was to expire January 1, 1896; but any goods held by the corporation at the expiration of the agreement should be held, disposed of, and paid for under the terms of the agreement.    Pursuant to this agreement, goods were shipped from time to time between June 1, 1894, and October 25, 1895.    At the latter date, when the receiver was appointed, some of the goods were in the hands of the corporation, unsold, and they went into the custody of the receiver.    The court, on the application of the petitioner, November 13, 1895, ordered these goods to be delivered to it, and they were so delivered.    Other goods had been sold and delivered to customers, but had not been paid for; and accounts, bills, and choses in action which were proceeds of such sales made in August, September, and October came into the custody of the receiver.    These amounted to:    August sales, $1,374.17; and September and October sales, $3,881.13; in all, $5,255.30.    There were never any goods charged under the 11-months clause in the agreement.    The petitioner, before commencing this proceeding, made claim to the moneys, accounts, bills, and choses in action, which the receiver refused to recognize.    The court held the petitioner entitled to this money, and directed it to be paid by the receiver.    We think the disposition of the fund made at special term was correct.    The agreement clearly created between the parties the ordinary relation of principal and agent. The general rule is that the relation between a commission agent for the sale of goods, and his principal, is fiduciary; that the title to the goods, until sold, remains in the principal, and when sold the proceeds, whether in the form of money or notes or other security, belong to him, subject to the lien of the commission agent for advances and other charges; that the agent holds the goods and the proceeds upon an implied trust to dispose of the goods according to the directions of the principal, and to account for and pay over to him the proceeds of such sales; that the relation between the parties in respect to the proceeds of the sales is not that of debtor and creditor simply; that the money and securities are specifically the property of the principal, and he may follow and claim them so long as their identity is not lost, subject to the rights of bona fide purchasers for value, and in case of bankruptcy or insolvency of the agent the goods and their proceeds do not pass to the assignees in

bankruptcy or receiver in insolvency, for general administration, but are subject to the paramount claim of the principal. This relation between the parties is subject to modification by express agreement, or by agreement implied from the course of business or dealing between them. The parties may so deal that the consignee becomes a mere debtor to the consignor for the proceeds of sales, having a right to appropriate the specific proceeds to his own use. Baker v. Bank, 100 N. Y. 31, 2 N. E. 452; Bank v. Heilbronner, 108 N. Y. 439, 15 N. E. 701. The only question here is whether, under the agreement made between the parties, their relations as to the proceeds of the property after the sales had been made were those of debtor and creditor, simply, or whether they were those of principal and agent.

It seems to us that all the provisions of the agreement indicate that the relation of principal and agent continued after the sales, and attached to the proceeds of such sales. The agreement provided that the goods should be shipped to the corporation for sale on commission, and prescribed the minimum price at which the sales should be made; that the corporation should receive, hold, and sell the goods as a factor or agent for the petitioner, and render accounts of the sales the middle of the month, and pay at the end of the month the amount of the selling price, less the commission; and that the goods should remain the absolute property of the petitioner until sold and delivered by the corporation to the customers. These and other provisions in the agreement clearly indicate an agency for the sale of goods on commission. The goods, until sold, were to be the property of the petitioner, and the corporation was to sell the petitioner's property as the petitioner's agent. The relation of principal and agent certainly existed, as to the property, until its actual sale and delivery. Why should it be said to terminate at the precise moment of the sale and delivery of the property, and not to continue as to the proceeds of the sales? It may be said that the agreement provided payment to the petitioner, not of the proceeds of the sales themselves, but an amount equal to the selling price, less the commission. We think this language was used, not to indicate a change in the relations of the parties, but merely to fix the amount to be paid over to the petitioner. It may be said that the allowance of time until the middle of the month to render accounts of the sales, and until the last of the month to pay over the money, indicated a design to give credit to the corporation for the money, and permit it to mingle the moneys with its own. We think the time for rendering the account was fixed for the purpose of enabling the corporation to account for all the sales at one time, rather than the several sales separately, and that the time for payment was fixed to permit a short credit to the purchasers, and to give the corporation an opportunity to make collections, and remit for various sales at one time, instead of remitting for each sale separately. We see nothing in the agreement to lead us to conclude that, as to the proceeds of the sales of these goods, the relation of principal and agent did not exist. The moneys, therefore, collected by the receiver, belonged,

not to the corporation, but to the petitioner; and the order directing the payment thereof to the petitioner was properly made, and should be affirmed, with costs.

PATTERSON and PARKER, JJ., concur.

O'BRIEN, J. (concurring). Where the relation of principal and agent is created and exists, the presumption is that such relation continues as to goods and proceeds of sale; and, to rebut such presumption, an agreement clear and expressive to the contrary is necessary. It will not do, therefore, to resort to ambiguous or doubtful phrases or language for the purpose of spelling out such an agreement. Taking the contract in its entirety, the intent of the parties to continue, as to the proceeds of sale, the relation of principal and agent, is reasonably free from doubt; and the contract cannot be construed into an agreement to establish, as to the proceeds, the relation of debtor and creditor. I therefore concur with Mr. Justice WILLIAMS for affirmance.

INGRAHAM, J. I dissent, as it seems to me that, under the contract, upon a sale of the goods the title to the proceeds of sale vested in James Chambers, Limited, which thereby became the debtor of the petitioner, as under the contract it was required to pay for the goods sold by it, regardless of the term of credit upon which they had been sold, or its collection of the purchase price. The James Chambers, Limited, being thus required to pay for the goods, not as guarantor, but as debtor of the petitioner, the parties must have contemplated the vesting of the title of the proceeds in it, and that the relation of principal and agent, as between the parties to this contract, should cease upon the sale and delivery of the goods.