Louis D. Laurino, J.
This is a discovery proceeding to determine title to 305 works of art which are now in the possession of the respondent.
From the proof submitted at a hearing had before the court without jury, it appears that the decedent was the widow of the late Arnold Friedman, an artist of some repute. In 1961 she transferred almost the entire collection of her late husband’s art works to the respondent, an art dealer, for exhibition and sale. The understanding between the parties at that time was oral and apparently provided for the respondent to act as the sole sales agent for the works of Arnold Friedman, retaining one half of any purchase price realized as his "commission”. Pursuant to this understanding respondent sold in 1962 one of the paintings for $300, remitting $150 to the decedent. Also, pursuant to this oral arrangement respondent dealer "advanced” the sum total of $1,500 to the decedent "against future sales”.
In May, 1963 decedent and respondent entered into a written agreement premised on the fact that the decedent wished "to have her late husband’s works properly distributed to the art world” and the fact that respondent "who is conducting an art gallery * * * was a friend and admirer of the late Arnold friedman”. Pursuant to the terms of this agreement, decedent "sells, transferrs [sic] and assigns all of the works of the late Arnold friedman, now in her possession * * * absolutely and *203 forever” to the respondent. In consideration for same respondent agreed to accept these art works; prepare them for sale and exhibition; "put forth his best efforts to sell”, and pay over to the decedent one half of the sale price as these art works were sold. The contract further provides that the respondent art dealer has the sole discretion as to the manner of sale and exhibition and the decedent "having parted with title to said works, [her] interest is limited to the receipt of one-half of the proceeds from the sale thereof’.
As to the performance of the parties in the past 14 years, it appears that the respondent has had only one public exhibition, in 1969, and has made only one sale, in 1974, for $1,000, half of which sum was given to decedent. Furthermore, respondent closed his public gallery in 1971 and since then has conducted business as a "private art dealer” from his apartment, which incidentally is in contravention of the terms of the respondent’s leasing agreement for these premises.
While a great deal of proof, as briefly outlined above, has been submitted as to the respondent’s lack of performance and possible breach of contract there is no need for the court to reach and determine these issues. For it is the opinion of the court that the subject written agreement is not a contract of sale but, in fact, a consignment arrangement that gave rise to an agency relationship which terminated on the death of the decedent principal (Matter of Szabo, 10 NY2d 94; Matter of Levine, 26 Misc 2d 307).
It is axiomatic that a consignment for sale is quite distinct, in principle, from a sale. On the one hand, if the provisions of a contract are such that title to the subject matter passes absolutely from one party to the other and a correlative obligation to pay the purchase price is imposed, the contract should be construed to be a contract of sale (Weston v Brown, 158 NY 360). On the other hand, even though a contract contains a recitation denoting passage of title and payment of purchase price, if it appears from all the terms of the contract that the buyer is required to act in a fiduciary capacity and as such account to the other party for the proceeds of a sale, the contract is one of consignment for sale (Matter of Chambers, 17 App Div 340).
Generally speaking, the relationship established between the parties to a contract, be they vendor-vendee or consignor-factor, should be determined by the plain and unambiguous provisions thereof (Depew v Keyser, 3 Duer [10 Super Ct] 335). *204 Where, however, it is not clear from all its provisions whether a contract is one of sale or consignment for sale, the court must resort to the acts of the parties under the contract and to the application of custom and usage to determine their relationship (American Seeding Mach. Co. v Stearns, 109 App Div 192). Just such a situation is presented herein. In the present case the subject contract speaks in terms of an absolute conveyance of title, but the respondent’s duties thereunder were fiduciary in nature with complete accountability for proceeds of sale to the decedent (see Matter of Chambers, supra). This patent inconsistency can only be resolved by resort to the acts of the parties and by the application of custom and usage, and it is after careful review of the proof submitted on both these issues that the court has reached the conclusion that the subject contract was a consignment arrangement.
From the first moment that respondent obtained possession of the collected works of Arnold Friedman he has consistently acted by his own testimony as the "agent” for decedent, collecting "sales commissions” on the two works of art that he did sell. Such was the case, both under the oral understanding of the parties and pursuant to the written agreement of 1963. In fact, when decedent’s daughter in 1970 expressed a certain amount of dissatisfaction with respondent’s performance under this agreement he replied brusquely, "Look, you can have the paintings back and see what you can do!” Certainly these are not the words of a man who has full title and interest in these paintings.
On the issue of custom and usage, section 219-a (subd 1, par [a]) of the General Business Law, which was enacted in 1966, provides that "whenever an artist delivers * * * a work of fine art of his own creation to an art dealer for the purpose of exhibition and/or sale on a commission, fee or other basis of compensation, the delivery to and acceptance thereof by the art dealer is deemed to be on consignment and (i) such art dealer shall thereafter, with respect to the said work of fine art, be deemed to be the agent of such artist”. While it is true that this statute was enacted subsequent to the date of the contract in this action and the statute specifically prescribes retroactive application, the court notes that the statute was originally enacted "to regulate the business relationships between artists and those art dealers who display and sell their work” and to protect "artists who have a limited market and access to that market only through art dealers” (Memo *205 randa of State Department of Law, McKinney’s Session Laws of 1966, pp 2963-2964). The legislative intent of this statute was not the creation of agency relationship in derogation of either common law or for that matter the existing practices in the trade, but merely "to clarify the inherently fiduciary character of the 'consignment arrangement’ in the artist-art dealer relationship” which had existed through custom and usage prior to the enactment of this statute (Memoranda of State Department of Law, McKinney’s Session Laws of 1969, pp 2412-2413).
These statements, albeit conclusory, were amply supported herein by expert testimony of custom and usage in the art trade in 1963. Each expert uniformly stated that with the rare exception of an outright sale for a sum certain of an art work from artist to dealer, the common practice in the trade is consignment of art works from artist to dealer for a specified period of time, normally 2 to 5 years. Viewed in this prospective, it is the court’s opinion that the present contract is a consignment agreement which terminated on the date of death of decedent principal.
Accordingly, the court directs that all the art works of the late Arnold Friedman presently in the possession of respondent (i.e., 167 paintings, 138 drawings and sketches, 2 folders of letters and miscellaneous memorabilia) be turned over to petitioner and that the petitioner pay to respondent $1,500 for moneys he advanced to decedent.