CAMREX (HOLDINGS) LTD., on Behalf of Itself as Shareholder of Camrex Reliance Paint Company, Inc. and in the Right of Camrex Reliance Paint Company, Inc., Plaintiff,

v.

CAMREX RELIANCE PAINT COMPANY, INC.; Reliance Marine Applicators, Inc.; Jerry C. Arger; Anthony J. Argiriadi; and James Mardikos, Defendants.

CAMREX CONTRACTORS (MARINE) LIMITED, Plaintiff,

v.

RELIANCE MARINE APPLICATORS, INC.; Camrex Reliance Paint Company, Inc.; Jerry C. Arger; Andrew A. Argiriadi; James Mardikos; and Anthony Saleh, Defendants.

Nos. 79 C 2380, 79 C 2381.

United States District Court, E. D. New York.

April 27, 1981.

Healy & Baillie by Glen T. Oxton, John M. Phufas, New York City, for plaintiff.

Watson, Leavenworth, Kelton & Taggart by Frank J. Colucci, Susan Progoff, New York City, for defendants.

1. Jury Demand, Dkt. # 15, 79 C 2381; Dkt. # 14, 79 C 2380.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

*The Nature of the Litigation*

Camrex (Holdings) Ltd. ("Camrex"), an English limited company, plaintiff in Civil Action 79 C 2380, brings this stockholder's direct and derivative action with federal jurisdiction based on the diverse citizenship of the parties. Its wholly owned subsidiary, Camrex Contractors (Marine) Limited ("CCML"), plaintiff in Civil Action 79 C 2381, asserts claims based on admiralty and maritime jurisdiction. Both have moved to strike defendants' timely demands in each action for trial by jury on "all issues involving claims for monetary relief."[1] CCML has also moved to amend its complaint. On their part, defendants have appealed from a United States Magistrate's order compelling production of certain documents and answers to interrogatories.

Camrex and its world-wide subsidiaries, including CCML, manufacture, sell, distribute and, on occasion, apply special coatings designed to protect ship surfaces from corrosion. Defendant Camrex Reliance Paint Company ("Reliance"), a New York corporation on whose behalf the derivative claims in the diversity action were brought, was partly reorganized in 1977 from a predecessor company, Reliance Paint, to become exclusive United States agent and manufacturing licensee of Camrex with respect to these coatings, pursuant to a Memorandum of Intent and stock purchase agreement, a sales agency agreement and a manufacturing license agreement. Pursuant to employment agreements executed about the same time, Reliance Paint's directors, officers and shareholders, Arger, Argiriadi and Mardikos, who are individual defendants in both actions, became officers and directors of newly named Reliance, each owning 20% of the authorized and issued stock. Camrex, owning the remaining 40%, was represented on the Reliance board by two of its own directors and employees, Messrs. Dillon

and Miller. Decisions on corporate action made by Reliance's board of directors required the approval of four of the five directors, the same number also constituting a quorum.

The present lawsuits arise from large contracts let through the Coastal Dry Dock & Repair Corporation ("Coastal") for the coating and related repair work performed on United States Navy vessels, in particular the contracts relating to the U. S. S. Caloosahatchee and U. S. S. Kalamazoo. For reasons and under circumstances which are in dispute, Reliance did not end up with the Coastal contracts. Instead, about the time the contracts were being let, defendants Arger, Argiriadi and Mardikos caused defendant Reliance Marine Applicators, Inc. ("Applicators") to be formed to engage in the business of blasting and then coating metal surfaces. Applicators—a New York corporation wholly owned by Whale Chemical Co., which itself is wholly owned by the individual defendants—ended up as Coastal's subcontractor for the blasting work. The complaints in both actions do allege, however, that the Coastal subcontract was originally with Reliance.

Following an exchange of telexes in the fall of 1978 with Arger—whether he was acting for Reliance or Applicators is uncertain—CCML undertook performance of the blasting and coating work already sublet by Coastal. Until December 31, 1978 one of CCML's directors and employees was Anthony Saleh, a British citizen and the other individual defendant in 79 C 2381. During the fall and winter 1978–1979, questions arose concerning the area aboard the ships to be blasted and coated, and the purported agreements of the parties were amended from prices calculated on the square footage to a lump sum for the two ships. Saleh left CCML and began to work for Applicators after December 1978, apparently following a confrontation with another CCML director and officer, Pagnam, concerning the area estimates for the contracts.

During performance of the coating and blasting work by CCML, Coastal paid money to Applicators for the work done but CCML claims it has not been fully paid for its work. Defendants have countered that the payments Applicators received were delayed because of CCML's inadequate and untimely performance. Apparently the work on both ships was completed by June 1979 and completion certificates issued.

*The Motions in 79 C 2381*

As already noted, federal jurisdiction in this action is based on the maritime and admiralty nature of the claims asserted. The right to a jury trial in actions at common law guaranteed by the Seventh Amendment and "preserved inviolate" by Rule 38(a), F.R.Civ.P., provides no basis for claiming a jury trial with respect to the issues in an admiralty or maritime claim so designated (as plaintiff has done) under Rule 9(h), as indeed Rule 38(e) expressly recognizes: "These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h)." See 5 J. Moore, J. Lucas, J. Wicker, Moore's Federal Practice, ¶ 38.35 (2d ed. 1980). Thus, it is immaterial that the issues underlying CCML's main claim for payment of the dry dock work it performed to repair and ready the two Navy ships for sea can be characterized as "legal" for purposes of a jury trial, since defendants have not contested, and reasonably could not, the maritime nature of CCML's claim. See 1 Benedict on Admiralty, § 189 at 1–37–40 (7th ed. 1980); 7A Moore's Federal Practice, *supra,* ¶ .230[4.–3] at 2801.

Furthermore, it is equally settled that a plaintiff's election to sue on an admiralty or maritime claim as the basis for federal jurisdiction binds the parties in the lawsuit to the inevitable procedural consequence of a court trial, e. g., *Harrison v. Flota Mercante Grancolombiana, S. A.,* 577 F.2d 968 (5th Cir. 1978) (third-party defendant sued on theories of negligence and products liability), even where a "legal" counterclaim has been interposed, *Alaska Barite Co. v. Freighters, Inc.,* 54 F.R.D. 192 (N.D. Cal.1972). *See Romero v. Bethlehem Steel Corp.,* 515 F.2d 1249, 1252–54 (5th Cir. 1975).

Defendants argue, however, that since there are some close identity of fact issues in the two actions and they have asserted a right to a jury in the diversity action, they should also have a jury trial in the maritime action, relying on *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). The argument misses the mark.

■ These two factually related actions do not present the procedural tangle, so frequently arising in seamen's actions to recover for personal injuries, which prompted the Supreme Court to rule in *Fitzgerald* that a seaman's admiralty claim for maintenance and cure should be submitted to a jury along with his Jones Act claim on which he had a statutory right to a jury trial. Here, unlike *Fitzgerald*, we do not have "what is essentially one lawsuit to settle one claim split conceptually into separate parts because of historical developments." 374 U.S. at 21, 83 S.Ct. at 1650. *See also Blake v. Farrell Lines, Inc.*, 417 F.2d 264 (3d Cir. 1969). Although there may be common fact issues, the claims here are essentially to recover for wrongs done a corporation by its directors and for payment for work done, asserted on behalf of independent entities on distinct jurisdictional grounds. The availability of a jury trial in the diversity action, which has not yet been consolidated for trial with the admiralty action, should not require a jury trial where it is otherwise unavailable. *Cf. Mahramas v. American Export Isbrandtsen Lines, Inc.*, 475 F.2d 165, 172–73 (2d Cir. 1973) (following directed verdict on Jones Act jury trial claim, maintenance and cure and unseaworthiness claims properly submitted to court in admiralty without jury).

■ Nor does CCML's inclusion of claims for damages resulting from defendant Saleh's alleged breach of his employment (service) contract and of his fiduciary duties under British company law as a CCML director necessarily dictate a different result. The problem is not jurisdictional, since the doctrine of pendent jurisdiction embraces the district court's admiralty jurisdiction and would encompass these claims against

Saleh, whatever their nature, legal, equitable or maritime. *See Leather's Best, Inc. v. S. S. Mormaclynx*, 451 F.2d 800, 809–11 (2d Cir. 1971); *Beverly Hills National Bank & Trust Co. v. Compania De Navegacione Almirante, S. A., Panama*, 437 F.2d 301, 305 (9th Cir. 1971). Rather, it is the contention that CCML's claims may prove to be "legal" in nature, thereby giving a defendant the right to jury trial on a non-admiralty claim the plaintiff has voluntarily appended to the lawsuit.

■ Anticipating the problem, CCML has pointed out that under English law a suit for monetary relief for losses resulting from a director's breach of fiduciary duties is an equitable action. *See* L. C. B. Gowers, The Principles of English Company Law, 852–57 (3d ed. 1978). But at this juncture it cannot be said that Saleh's service contract, not yet part of the record, is maritime in nature for which no right to a jury trial would exist. Unquestionably Saleh's contract in 1978 was with a company most of whose business contracts probably could be considered maritime. *Cf. Hinkins Steamship Agency, Inc. v. Freighters, Inc.*, 498 F.2d 411 (9th Cir. 1974). Yet in not detailing the nature of Saleh's employment duties which are at issue, CCML has failed to demonstrate the "direct and proximate juridical link between the contract and the operation of [a] ship, its navigation or management thereof," 1 Benedict on Admiralty, *supra*, § 183 at 11–8, which justifies the assertion of maritime jurisdiction. *Cf.* 7A Moore's Federal Practice, *supra*, ¶ .230[4–2] at 2789–90.

Although the indications are that the contract claim against Saleh must be considered "legal," entitling him to a jury trial, plaintiff, in its eagerness to have a bench trial, has indicated its preference to drop the claim if it is subject to jury trial. Accordingly, the motion to strike the jury demand in 79 C 2381 will be granted provided the breach of contract claim against Saleh is dropped.

The motion to amend the complaint in the maritime action clearly must be granted. Defendants' sole objection is that the amended complaint supposedly changes the

theory of the first cause of action from legal (contract) to equitable (unjust enrichment; quantum meruit). The merits of defendants' argument aside, the general rule that there is no right to a jury trial in an admiralty claim amply demonstrates that the proposed amendment will not jeopardize any right they would have had to a jury trial.

*The Motion in 79 C 2380*

The motion to strike the jury demand in 79 C 2380 presents more complex questions because of the number and variety of causes of action and prayers for relief that involve money.

The same facts and circumstances underlie all of Camrex's shareholder's direct and derivative claims. Paragraphs 17 to 25 of the complaint allege that defendants Arger, Argiriadi and Mardikos formed Applicators while directors and officers of Reliance; that they committed Reliance to the coating contracts despite a prior refusal of the plaintiff stockholder and the two other Reliance directors to approve entry into such business (as detailed in paragraph 16); that they "misappropriated, converted and wasted" unknown amounts of Reliance's moneys by transferring money to Applicators and paying expenses incurred by Applicators; that they used Reliance to pay workmen Applicators employed on the Coastal subcontract but did not report these amounts to the Internal Revenue Service as payroll, just reimbursement of expenses, and did not make the reports and payments required by the New York Workmen's Compensation Law; that they made loans to themselves to buy Applicators stock; and that they transferred the coating subcontracts from Reliance to Applicators. Paragraph 27 alleges that plaintiff has no adequate remedy at law. All these actions except the transfer of moneys to Applicators and payment of its expenses, Complaint ¶ 20, are alleged to have occurred without the knowledge or consent of plaintiff or the Reliance directors representing its interests, Messrs. Dillon and Miller.

By its first cause of action against all defendants, reiterated in its ad damnum clause, plaintiff seeks an "accounting" of all Reliance property that has come into the hands of Applicators and the individual defendants, and "judgment" against Applicators and the individual defendants on Reliance's behalf for any property or money of Reliance wrongfully or fraudulently paid out, disbursed or delivered or which in any manner has been lost or wasted. Judgment for the sums demanded is also based on the third cause of action which seeks "return of all funds misappropriated to Applicators, reimbursement of all wrongful advances, rescission of all contracts between Applicators and Camrex Reliance" and unascertained damages.

The fourth cause of action asserts that by their formation of Applicators, the individual defendants converted a corporate opportunity of Reliance and seeks to recover Applicators' "profits" and all distributions the individual defendants have received. Judgment is also sought on Reliance's behalf against the individual defendants and Applicators for these amounts. The second, fifth and sixth causes of action essentially charge the individual defendants with liability for breaching their fiduciary duties as Reliance directors and officers and their employment contracts. As relief, Camrex seeks an order removing the individual defendants as directors and officers of Reliance and directing them to sell their Reliance shares in accordance with the Memorandum of Intent. Also sought is a judgment on Reliance's behalf terminating the individual defendants' employment contracts and awarding it damages for their breach of the employment contracts and for causing Reliance to breach the Memorandum of Intent.

As further relief, based on the allegations of its first cause of action, Camrex seeks judgment against the individual defendants and Reliance for money damages for breach of the Memorandum of Intent as well as for termination on account of breach of the Memorandum of Intent, the employment, manufacturing license and sales agency agreements. Injunctions also are sought against the use by Reliance, the individual

defendants and Applicators of the Camrex name, manufacturing formulas, sales materials, logo and trademark. In relation to the fourth cause of action, Applicators is also to be enjoined from holding itself out as having the equipment or technical expertise of the Camrex group behind it.

On their part, defendants have interposed counterclaims.[2] The first alleges that Camrex has breached the Memorandum of Intent and manufacturing license agreement, and seeks an order directing specific performance thereof. Next, defendants allege that on a prior contract relating to the U. S. S. Butte and on the contracts relating to the U. S. S. Caloosahatchee and U. S. S. Kalamazoo, on the basis of the contract price Applicators had agreed to pay CCML for the work it performed, there is an outstanding debit in Applicators' favor of about $52,000 above the contract price representing money that Applicators allegedly had advanced to CCML for the latter's expenses and payroll on the three jobs. The third counterclaim is for payment by Camrex for coatings Reliance sold to overseas customers of Camrex at its direction but which have not been paid for. The fourth counterclaim seeks to hold Camrex and CCML liable for any potential liability for unpaid withholding tax and workmen's compensation deductions, on the ground that defendants made the payments and kept the books relying on the fraudulent representations and directions of plaintiff and its representatives. The final counterclaim seeks to enjoin plaintiffs from further acts injurious to defendants' business.[3]

At the outset, because "the Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action," *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), it is clear that the legal or equitable nature of the issues involved in the claims asserted in this action must be determined without regard to the traditionally equitable character of the stockholder's right to sue derivatively on behalf of the corporation. *Id.*, 396 U.S. at 539, 90 S.Ct. at 738. To determine the nature of an issue the Court must consider "the historic legal and equitable practices applicable to such issues," *In re Gartenberg*, 636 F.2d 16, 18 (2d Cir.), *cert. denied* —— U.S. ——, 101 S.Ct. 1979, 68 L.Ed.2d 298 (1981), *aff'g* 487 F.Supp. 999 (S.D.N.Y.), in light of "the remedy sought [and] the practical abilities and limitations of juries." *Ross v. Bernhard, supra*, 396 U.S. at 538 & n.10, 90 S.Ct. at 738. Thus the Court should determine whether the "rights and remedies" involved in the parties' claims are "of the sort traditionally enforced in an action at law." *Pernell v. Southall Realty*, 416 U.S. 363, 375, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198 (1974). As Justice Story explained:

> "The phrase 'common law,' found in this clause [Seventh Amendment] is used in contradistinction to equity, and admiralty, and maritime jurisprudence.... By *common law* [is] meant ... not merely suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized and equitable remedies were administered .... In a just sense, the amendment then may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever might be the peculiar form which they may assume to settle legal rights." *Parsons v. Bedford*, 3 Pet. 433, 446–47, 7 L.Ed. 732 (1830).

*See Pernell v. Southall Realty, supra*, 416 U.S. 374, 94 S.Ct. 1729; *Curtis v. Loether*, 415 U.S. 189, 193, 94 S.Ct. 1005, 1007, 39

---

**2.** Except for the first and third counterclaims in 79 C 2380 which were not made in 79 C 2381, the counterclaims in the two actions are the same. By an earlier order this Court dismissed without prejudice the defendants' fifth numbered counterclaim in 79 C 2380, sounding in the tort of abuse of process.

**3.** The restriction of defendants' jury demand to issues involving monetary relief, see Rule 38(c), F.R.Civ.P., operates as a waiver of any jury trial that may inhere in plaintiffs' other claims for relief. See Rule 38(d).

L.Ed.2d 260 (1974); *Ross v. Bernhard, supra*, 396 U.S. at 533, 90 S.Ct. at 735.

It must be remembered that "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings," *Dairy Queen Inc. v. Wood*, 369 U.S. 469, 477–78, 82 S.Ct. 894, 899–900, 8 L.Ed.2d 44 (1962). Nevertheless, where the same circumstances may give rise to legal and equitable relief, the prayer for relief may be determinative, *see* 5 Moore's Federal Practice, *supra*, ¶ 38.17, provided, of course, that if the relief sought is in equity, the claim's proponent has demonstrated the "necessary prerequisite" to all equitable remedies, "the absence of an adequate remedy at law." *Dairy Queen Inc. v. Wood, supra*, 369 U.S. at 478, 82 S.Ct. at 900.[4]

With these principles in mind, the claims against the individual defendants supporting the demands in ¶¶ A.1, A.2 of the ad damnum clause must be considered equitable. As the complaint amply demonstrates, the individual defendants are being sued chiefly because Reliance's property and money have allegedly been applied by them not to benefit Reliance but an independent, competitive corporation, Applicators, through their ownership of which, it is alleged, they also have benefited. Such a claim plainly is for breach of the fiduciary duty they owed their corporation as officers and directors. See generally 3 Fletcher, Cyclopedia of Corporations, § 850 (1975). Traditionally, equity has retained jurisdiction of suits for breach of directors' and officers' fiduciary duty to make the directors account for and make good the property and money entrusted to them but misapplied and lost, and to make restitution of any gain they thereby received. See, e. g., *Bosworth v. Allen*, 168 N.Y. 157, 61 N.E. 163 (1901); *Brinckerhoff v. Bostwick*, 88 N.Y. 52 (1882). Jurisdiction in equity has remained the rule under New York Business Corporation Law, § 720, which expressly sanctions such suits. See *Krauss v. Dinerstein*, 62 Misc.2d 682, 309 N.Y.S.2d 962, 964 (Civil Ct., City of New York, 1970) (City Court lacks equity jurisdiction to entertain suit); see also *Ali Baba Creations, Inc. v. Congress Textile Printers, Inc.*, 41 A.D.2d 924, 343 N.Y.S.2d 712 (App.Civ. 1st Dep't 1973). In an action to make a fiduciary account with respect to an alleged breach of fiduciary obligations there is no seventh amendment right to a jury trial. *In re Gartenberg, supra*, 636 F.2d at 18; see generally, 5 Moore's Federal Practice, *supra*, ¶ 38.25 at 38–206–07 & nn.10, 11.

Less certain is plaintiff's entitlement to an accounting and award in equity against Applicators of all Reliance funds wrongfully advanced, misappropriated, converted or wasted, as set forth in the first and third causes of action. An accounting in equity traditionally has been granted where the defendant is a fiduciary, or when the legal remedy has been rendered inadequate because of the complexity of the accounts. See 5 Moore's Federal Practice, *supra*, ¶ 38.25. The latter ground has been severely undercut by the *Dairy Queen* decision, and plaintiff has not urged it. But its reliance on the traditional exclusive equity

4. The holding of *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), that plaintiff's request for an accounting could not deprive the defendant of its right to a jury trial, is not apposite in considering the claim for an accounting by fiduciaries. In that case a trademark licensor sued the licensee to recover damages for breach of contract (alternately viewed as damages for trademark infringement). Emphasizing the critical prerequisite of equity jurisdiction, the inadequacy of the legal remedy, the Court commented that "it was settled in *Beacon Theaters [Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)] that procedural changes which remove the inadequacy of a remedy at law may sharply diminish the scope of traditional equitable remedies by making them unnecessary in many cases." 369 U.S. at 478 n.19, 82 S.Ct. at 900. The availability of a Special Master under Rule 53(b) to make the complicated accounts, and the submission of the report to the jury preserved the inadequacy of the legal remedy. But the *Dairy Queen* holding did not purport to reach the other traditionally exclusive basis of accounting in equity, claims against fiduciaries. See 5 Moore's Federal Practice, *supra*, ¶ 38.25. See also *Ross v. Bernhard, supra*, 396 U.S. at 542, 90 S.Ct. at 740 (implicitly recognizing that the allegations of a breach of a fiduciary duty might require a non-jury trial).

accounting by fiduciaries with respect to both the loans and expenses paid out by Reliance to Applicators' benefit cannot entirely support its assertion of no jury trial, under the circumstances and pleadings in this case.

Whatever role Applicators has played, plaintiff has not questioned its distinct corporate identity. Applicators clearly does not have automatic status as a fiduciary. Furthermore, the division of power between Camrex and its representatives, Miller and Dillon, and the individual defendants seems to preclude a finding at this stage that Applicators should be treated as a fiduciary because it has dominated the Reliance board. *Blaustein v. Pan American Petroleum & Transport Co.*, 293 N.Y. 281, 56 N.E.2d 705 (1944); *Ripley v. International Railways of Central America*, 8 A.D.2d 310, 188 N.Y.S.2d 62, 64–67 (App.Div., 1st Dep't 1959), *aff'd*, 8 N.Y.2d 430, 435–36, 209 N.Y. S.2d 289, 171 N.E.2d 443 (1960). Nevertheless, the New York courts have suggested an accounting in equity may be allowed where the defendant can be considered a fiduciary because of the court's willingness to treat him as a constructive trustee despite an adequate remedy at law, *e. g., Fur & Wool Trading Co. v. Fox*, 245 N.Y. 215, 156 N.E. 670 (1927);[5] *see also Williams v. Collier*, 32 F.Supp. 321, 324 (E.D.Pa.1940). Although plaintiff has not suggested a constructive trust is needed with respect to the money advanced from Reliance, one might be appropriate to trace any of the loan money which may have come into the individual defendants' hands.

■ An accounting, however, on the basis of a constructive trust imposed on Applicators cannot be awarded with respect to Reliance funds that were used to pay Applicators' expenses. Plaintiff has not suggested that the money ever was in Applicators' hands. Recovery of such amounts by Reliance from Applicators would have to be pursued on some theory of subrogation to the indebtedness of Applicators to third parties which Reliance discharged.

**5.** But see the criticism of this approach voiced in G. Palmer, Law of Restitution, § 1.5 at 25–27 (1978).

■ To the extent that the money paid out from Reliance for loans and expenses was paid out under contracts, plaintiff correctly urges that recovery of such amounts may be had in equity without a jury trial since the relief sought is rescission, which will entail restitution of the sums involved in plaintiff's performance. See *Arber v. Essex Wire Corp.*, 490 F.2d 414, 421–22 (4th Cir. 1974); 5 Moore's Federal Practice, *supra*, ¶ 38.23 at 38–187. Such relief accords with the provision of New York Business Corporation Law, § 720(a)(2), which in this respect must be construed to provide equitable relief only.

■ To the extent that there were no contracts between Applicators and Reliance regarding the loans and payment of expenses, plaintiff is correct that the remedy to which it is entitled is restitution. But it is mistaken in believing that restitution is limited to equity and that no jury trial is available where restitution is sought. As the Court of Appeals has recognized, " '[w]hen restitution is sought in the form and in the situations allowed in equity prior to the rules or authorized by valid statute there is no right to a jury trial.' 5 Moore's *supra*, ¶ 38.24[2] at 190.6." *Securities and Exchange Commission v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 95 (2d Cir. 1978). Neither *Commonwealth Chemical Securities* nor *Gartenberg, supra*, suggest dispensing with traditional equity analysis of the adequacy of the legal remedy in reviewing claims for restitution.

Though founded on equitable principles, restitution is a doctrine which underlies remedies at law and in equity. See 1 G. Palmer, Law of Restitution, § 1.1 at 3–4, 9 (1978); Restatement of Restitution, Introductory Note at 4 (1937). Observing that in many situations the equity doctrine of the adequacy of the legal remedy does not bar award of restitution in equity, one commentator has noted that "where the plaintiff

seeks relief in equity which he can obtain at law, the importance of the choice lies within a narrow compass, usually relating to jury trial." G. Palmer, *supra*, § 1.6 at 35.

Here, the restitutional remedy available at law which plaintiff might have invoked against Applicators, with respect to loans it made (though not under contract), is the common count under general assumpsit of money had and received, *see generally* 50 N.Y.Jur., Restitution, § 2 at 133–37 & n.10 at 143–45 (1966). Although that remedy may have been inadequate in the circumstances of this case, see *Quintal v. Kellner*, 264 N.Y. 32, 189 N.E. 770 (1934),[6] there seems to be an adequate remedy at law to recover the amounts of Applicators' expenses Reliance was caused to pay.

 Presumably these were expenses Applicators incurred as debts to third parties, and, as suggested above, when Reliance's funds were "misappropriated, converted and wasted" by the defendant directors to pay those expenses for the benefit of Applicators, Reliance could claim to be subrogated to the claims of the third parties its payments discharged. Plaintiff has not suggested that these claims are anything other than "legal." "When the right of action to which the plaintiff claims to be subrogated is a legal one the cause in subrogation may be treated as an action at law." *Fidelity & Casualty Co. of New York v. Finch*, 3 A.D.2d 141, 159 N.Y.S.2d 391, 394 (App.Div.3d Dep't 1957). *See Tishman Realty and Construction Co. v. Schmitt*, 69

Misc.2d 584, 330 N.Y.S.2d 174 (Civ.Ct., City of New York 1972) (awarding jury trial). Though its origins are equitable, like those of the stockholder's derivative suit, subrogation should not bar a jury trial where the claim is a legal one. *Cf. Ross v. Bernhard, supra*, 396 U.S. at 538–42, 90 S.Ct. at 738–40 (discussing jury trial in context of shareholder's derivative suit).

Thus, defendant Applicators is entitled to claim a jury trial with respect to the issues underlying Reliance's payment of Applicators' expenses, although the individual defendants would not have been entitled to do so.

Reliance's claim against the individual defendants for causing it to breach the Memorandum of Intent cannot, however, be viewed in the same light as Reliance's claim against the directors as fiduciaries for transferring Reliance moneys to the benefit of another. The duty the individual defendants owed the corporation in relation to this claim, for which they are sought to be held in damages, was to manage the affairs of the corporation so as to avoid losses incurred through breach of contracts entered into with outsiders. For breach of this duty plaintiff seeks as damages not the money which defendants allegedly misappropriated to the benefit of Applicators and themselves, the subject of its claims in equity, but plainly compensation for the injury the corporation has sustained through their mismanagement, *viz.*, Reliance's liability upon Camrex's claim against it for breach of contract.[7] Such a claim traditionally was

---

**6.** In *Quintal*, recovery was sought of moneys which plaintiff corporation's officers had "caused to be paid by said corporation" to the defendant for personal purposes beyond the scope of their authority. 264 N.Y. at 35, 189 N.E. 770. Recognizing that ordinarily an action for conversion or for money had and received would lie against the officer and the transferee where "possession only and not title passed from the corporation," the court nevertheless concluded no action for money had and received could be brought. Title to the money had passed from the corporation, and there could "be no conversion of corporate funds through acceptance of corporate moneys paid out by the corporation itself." *Id.* The proper remedy would be to "disaffirm the transaction and demand restitution." *Id.*

The crux of the decision was that the transfer was within the authority of the officers responsible. Here, too, the absence of any allegation that the transfer occurred without the knowledge or consent of plaintiff or Messrs. Dillon or Miller negatives the basis for an action for money had and received, that the transfer was made without authority to do so.

See *Henry v. First National Bank of Ardsley*, 110 N.Y.S.2d 115, 123, 125, 126 (Sup.Ct. Westchester Co. 1951).

**7.** Reliance, of course, would be entitled to a jury trial on Camrex's claim against it for breach of the Memorandum of Intent since that presents only a classic claim for damages for breach of contract.

brought at law in New York. See *Dykman v. Keeney*, 154 N.Y. 483, 48 N.E. 894 (1897); *Hun v. Cary*, 82 N.Y. 65, 79–80 (1880); *O'Brien v. Fitzgerald*, 6 A.D. 509, 39 N.Y.S. 707 (App.Div. 1st Dep't), *aff'd*, 150 N.Y. 572, 44 N.E. 1126 (1896); *Higgins v. Tefft*, 4 A.D. 62, 38 N.Y.S. 716 (App.Div. 1st Dep't 1895). See also *Potter v. Walker*, 276 N.Y. 15, 25–26, 11 N.E.2d 335 (1937).

It is true that recovery by the corporation may now be had as well under the New York Business Corporation Law, § 720, but the remedy under that provision expressly does "not affect any liability otherwise imposed by law." *Id.*, § 720(c). The section has been interpreted not to provide for a damages award at law, *Ali Baba Creations, supra*; see also *Klein v. Tabatchnick*, 610 F.2d 1043, 1050 (2d Cir. 1979) (upon reversal of summary judgment granting leave to amend ad damnum clause to make it a demand that defendant account for damages, rather than for money judgment). But the complaint discloses no exclusive reliance on the statutory provision. Furthermore,

> "the right to a jury trial in federal courts is to be determined as a matter of federal law in diversity as well as other actions . . . . In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law . . . but the characterization of that state created claim as legal or equitable for purposes of whether a right to a jury trial exists must be made by recourse to federal law." *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963) (*per curiam*).

The Seventh Amendment plainly "does apply to actions enforcing statutory rights" and "where there is obviously no functional justification for denying a jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law." *Curtis v. Loether, supra*, 415 U.S. at 195, 94 S.Ct. at 1009. The New York cases previously cited demonstrate that the recovery the corporation seeks against the individual defendants as officers and directors for causing Reliance to breach the Memorandum of Intent sounds in tort, the breach of a duty to manage the corporation without injury to it. Thus on this claim the individual defendants are entitled to a jury trial.[8]

Similarly, the individual defendants are entitled to a jury trial on the claim against them for damages for breach of their employment contracts. The obligations the defendants owed under the employment agreements are separate from those imposed on them by State or common law. The extraordinary jurisdiction of the chancellor is not needed to adjudicate whether the defendants breached their contracts or the damages plaintiff sustained. These are "allegations of ordinary breach of contract," *Ross v. Bernhard, supra*, 396 U.S. at 542, 90 S.Ct. at 740, which present but "a classic example of a claim cognizable at law." *Prudential Oil Corp. v. Phillips Petroleum Co.*, 392 F.Supp. 1018, 1022 (S.D.N.Y.1975).[9]

---

**8.** The predecessor statute, General Corporation Law, §§ 60, 61, repealed L.1973, C. 451 § 2, it bears noting, expressly provided for a jury trial of negligence claims. *Bookbinder v. Chase National Bank*, 244 App.Div. 650, 280 N.Y.S. 393 (1st Dep't 1935), on which plaintiff relies, only held that a stockholder bringing a derivative suit could not demand a jury trial on the issue of the defendants' negligent mismanagement, since a stockholder was not enumerated among the persons entitled to sue under the statute's provisions, but was bound to sue in equity which could entertain the derivative claim. Certainly the nature of the issue test formulated in *Ross v. Bernhard* would dictate a different result in federal court.

See also *Duane Jones Co. v. Burke*, 280 App. Div. 889, 115 N.Y.S.2d 529 (1st Dep't 1952).

**9.** Although a claim for a rescission of a contract is "traditionally equitable," 5 Moore's Federal Practice, *supra*, ¶ 38.23 at 38–187, and ordinarily entails no right to a jury trial, where the same circumstances are urged also as the basis for damages, as plaintiff has done here, under *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), and *Dairy Queen, supra*, a party cannot be deprived of a jury trial on the fact issues underlying the latter claim. See *Johns Hopkins University v. Hutton*, 326 F.Supp. 250, 262–65 (D.Md.1971); *Richland v. Crandall*, 259 F.Supp. 274 (S.D.N.Y.1966).

No jury trial may be had upon the damages claimed against the individual defendants or Applicators for misappropriation of a corporate opportunity. Such a claim must be brought in equity, requiring as it does application of a constructive trust in order to ensure full recovery of the benefits of which the corporation was allegedly wrongfully deprived by breach of the defendant directors' fiduciary duties. See, e. g., *Foley v. D'Agostino*, 21 A.D.2d 60, 248 N.Y.S.2d 121, 128–29 (App.Div. 1st Dep't 1964); *Robert N. Brown Associates, Inc. v. Fileppo*, 38 A.D.2d 515, 327 N.Y.S.2d 133 (App.Div. 1st Dep't 1971). See generally G. Palmer, Restitution, *supra*, § 2.11(c) at 154–57.

Finally, as to defendants' counterclaims, the Court cannot agree with plaintiff that none of them properly provides a basis for a jury trial right in 79 C 2380. Although it may be that the counterclaim for the balance due on CCML's accounts with Applicators is correctly made only in the maritime action, the same cannot be said of the claim to hold Camrex liable over for any liability defendants may sustain for incomplete reporting of withholding taxes or nonpayment of the workmen's compensation contributions. Defendants' allegations plainly implicate plaintiff Camrex for its alleged fraudulent misrepresentation about the circumstances under which defendants were to issue the checks. Thus Camrex's voluntary admission of liability for the coatings Reliance supplied to Camrex's customers (Plaintiff's Jury Trial Reply Br. at 10) by itself is insufficient to remove all legal issues from the counterclaims or defeat defendants' proper demand for a jury.

The consequence of the presence of legal and equitable claims in one action under the Supreme Court's cases of *Dairy Queen, supra,* and *Beacon Theaters Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), was stated in *Ross v. Bernhard, supra,* in these terms:

> "[W]here equitable and legal claims are joined in the same action, there is a right to a jury trial on the legal claims which must not be infringed either by trying

the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims." 396 U.S. at 537–38, 90 S.Ct. at 738.

Thus, to the extent that there are common issues of fact among Reliance's claims against the individual defendants for breach of their employment agreement, against Applicators for the moneys of Reliance used to pay Applicators' expenses, those against Reliance by Camrex for breach of the Memorandum of Intent, and against the individual defendants by Reliance for causing it to breach that Memorandum, and the other claims against Applicators and the individual defendants which sound in equity, those issues will be tried to the jury.

*Discovery Appeal*

The discovery order objected to required defendants to produce the documents requested in item (4) of plaintiff's first request for production of documents and in items (1) and (2) of plaintiff's second request. The order also directed defendants to answer interrogatories 7, 8, 9, 11, 15, 17, 17 [sic] and 18 in plaintiff's first set of interrogatories and interrogatories 2, 9(b), 10(b), 22, 45(h), 48(b) and 64 in plaintiff's second set. In the absence of a written statement amplifying defendants' objections, the Court has reviewed the interrogatories and defendants' stated objections and finds no abuse of discretion in the Magistrate's order.

Accordingly, plaintiff's motion to strike the jury demand in 79 C 2380 is denied but the motions in 79 C 2381 to strike the jury demand and to amend the complaint are granted, provided that plaintiff drops its claim for damages against Saleh for breach of his employment contract. The Magistrate's order appealed from is affirmed.

SO ORDERED.